THE GALE SULKY HARROW MANUFACTURING COMPANY
v. ISAAC STARK.

PROMISSORY NOTE—*Action—Answer—Breach of Warranty — Rescission of Contract.* The plaintiff sued on a promissory note, which at the end thereof and immediately before the signature contained the following words, to wit: "No promise or contract outside of this note will be recognized." The defendant answered, setting up in substance that the note was given for a certain farming implement sold by the plaintiff to the defendant, which was warranted by the vendor to be sufficient for a particular purpose, but which was not sufficient for such purpose and was wholly insufficient, and that the defendant offered to return the implement, and rescinded the contract. *Held,* That such a defense may be made; that the alleged warranty may be shown, notwithstanding the aforesaid words in the promissory note; that as the implement sold was essentially different from what it was warranted to be, and would not answer the purpose for which it was warranted, it may be returned and the contract rescinded; and that the evidence introduced on the trial was sufficient to sustain the verdict of the jury in favor of the defendant.

*Error from Greenwood District Court.*

THIS was an action brought before a justice of the peace of Greenwood county, on March 18, 1887, by *The Gale Sulky Harrow Manufacturing Company* against *Isaac Stark,* for the recovery of $65 and interest, on the following promissory note, to wit:

"$65.      GREENWOOD CO., STATE OF KANSAS,  
August 7, 1885.

"On or before the 1st day of October, 1886, I promise to pay Gale Sulky Harrow Manufacturing Company, or order, $65, at Eureka Bank, of Eureka, Kansas, value received. If paid at maturity, interest at 10 per cent. from August 1, 1886, but if not paid when due, interest at 10 per cent. per annum from date until paid. No promise or contract outside of this note will be recognized.        ISAAC STARK."

The defendant answered, setting forth in substance that the note was given for a Gale sulky harrow and seeder, sold by the plaintiff to the defendant, and warranted to do good work, which warranty the defendant relied on; that the im-

plement was not as warranted, and that there was a breach of the warranty; that the defendant rescinded the contract and offered to return the implement; and that he was damaged in the sum of $100. The plaintiff replied by filing a general denial. By consent of the parties the case was certified to the district court, where, on January 24, 1888, it was tried before the court and a jury, and the jury rendered the following verdict and made the following findings, to wit:

"We, the jury in the above-entitled cause, do, upon our oaths, find for the defendant."

"1. Was the note sued on this action given in payment for a Gale sulky harrow and seeder sold by plaintiff, through its agent, to defendant? Yes.

"2. Was said implement sold with a warranty? Yes.

"3. If said implement was sold with a warranty, was the warranty oral or in writing? Oral.

"4. Was the warranty given by an agent of plaintiff? Yes; by agent or salesman.

"5. Was the agent of plaintiff authorized to give a warranty? We don't know.

"6. Was plaintiff informed that its agent had sold the implement with a warranty? Yes; on or about October 4, 1886.

"7. What language did plaintiff's agent use in giving the warranty? If the jury cannot give the exact language used, give the substance. 'Warranted to sow from one to four bushels of seed per acre; could not be chocked out.'

"8. Did defendant see the implement before he purchased it, and if so, what examination did he make of it? Yes; as exhibited by agent or salesman on road.

"9. Did the implement comply with the warranty? If not, in what respect did it fail? No; failed to sow the required amount of seed, and would choke out.

"10. Was there any defect in the implement at the time it was delivered to defendant? Yes.

"11. If there was any defect in implement or in its construction at the time it was delivered to defendant, what was that defect? It failed to work as warranted.

"12. If the implement sold to defendant did not do good work, was it the fault of the implement or was it the fault of the person using it? It was the fault of the implement.

"13. If the implement did not comply with the warranty,

when did defendant first discover that fact? In spring of 1886.

"14. Did the defendant return or offer to return the implement? Yes.

"15. If defendant offered to return the implement, state when and to what person he made the offer. To H. A. Dales, about October 4, 1886.

"16. What language did defendant use in offering to return the implement? If the jury cannot give exact language, give substance of language used. 'I will give you $35 and the machine as a compromise, rather than to go into a lawsuit.'

"17. What authority had the Eureka Bank or its employés from plaintiff? As collecting agents.

"18. Where did defendant keep the implement, and what care did he take of it during the time it was in his possession? Out of doors, by his granary or stable; the same care he gave his other farming implements.

"19. If the defendant at any time offered to return the implement to plaintiff, in what condition was the implement at that time? About the same as when received, except the wear.

"20. Was the implement ever at any time returned to and received by plaintiff? No.

"21. If the defendant at any time offered through the Eureka Bank to return implement to plaintiff, the jury may state whether such offer was made by way of compromise. State the terms of the offer. Yes; to avoid lawsuit."

Upon this verdict and these findings the court rendered judgment in favor of the defendant and against the plaintiff for costs, and the plaintiff brings the case to this court for review.

*Jones & Shultz,* and *C. W. Shinn,* for plaintiff in error.

*W. S. Marlin,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: In this action we think the defendant had the right to prove a parol warranty of the sufficiency of the implement purchased for the purpose for which it was purchased, notwithstanding the words contained in the instrument sued on, to wit: "No promise or contract outside of this note

will be recognized. ISAAC STARK." Upon the face of the note it would seem that Stark, the promisor, the one who signed the note, would be the person who would not recognize any other promise or contract outside of the note. (See also, *Thompson v. Manufacturing Co.*, 29 Kas. 476.) We think there was also sufficient evidence from which the jury might find a warranty. The implement was sold, however, by an agent of the plaintiff, but as such agent had the entire control of the property, and assumed to have the right to make the warranty, and as the defendant had no notice to the contrary, and as a warranty at least to the extent of the price of the property would seem to be within the scope of the agent's authority, and as the company afterward accepted the fruits of the agent's sale, we would think that the facts would authorize a holding that the agent did have sufficient authority to make the warranty. We also think that the defendant had a right to prove a rescission of the contract of purchase and sale, and his offer to return the property to the plaintiff. Upon this question there is a conflict of authority. Some courts hold that where the title to the property has passed to the vendee, and no fraud can be shown on the part of the vendor, but only a breach of the warranty, the vendee cannot rescind the contract; but other courts hold otherwise, and this court seemingly holds otherwise. (*Weybrich v. Harris*, 31 Kas. 92.) In the case just cited it is held that the vendee has one of two remedies: First, he may return the property and rescind the contract; or, second, he may affirm the contract and sue for damages for the breach of the warranty. In 3 Am. & Eng. Encyc. of Law, 929 to 931, the following language is used:

"A contract may be rescinded when the entering into the same has been induced by a false representation, fraudulent *or otherwise*, made by a party thereto, provided such representation be one of fact (this rule does not apply to cases of actual fraud), as distinguished from either matter of law or mere opinion or intention,—that it be such as to induce the contract, and that it be made as part of the same transaction. Such a contract, however, is voidable and not void, and cannot be rescinded if the parties cannot be put *in statu quo*, nor

after third persons have for value acquired rights thereunder, and the rescission must take place within a reasonable time, notice of the election to rescind having been communicated to the other party, though this may be done by bringing suit to have the contract set aside. Otherwise the right of rescission will be considered waived by acquiescence."

We think this is a correct statement of the law, although there are some authorities to the contrary. (See 1 Benj. Sales, [4 Corbin's Am. Ed.] §§ 623 to 635, and especially §§ 628 to 634.) It is not necessary in this case that we should hold that in all cases of a breach of warranty in the sale of personal property the vendee may return or offer to return the property and rescind the contract, but we think that such is the rule for cases like the present, where the property purchased and received is substantially different from what it was warranted to be and will not answer the purpose for which it was warranted. It must also be remembered that in the present case nothing had been paid for the property when the contract was rescinded, but only a promissory note had been given for the purchase-price thereof. Of course an offer to return the property where the offer is refused answers the same purpose as an actual return, provided that the property is retained for the benefit of the vendor whenever the vendor may choose to receive it. In this case the vendee offered to return the property and then kept it for the plaintiff, and at all times he kept it just as safely and as well as he kept his own property. The offer to return the property was on two different occasions and to two different agents of the plaintiff. On the first occasion the agent had the note sued on in his possession and was attempting to collect the same. On the other occasion the agent was at the defendant's house attempting to collect the note, and while the implement was present and in sight of both the agent and the defendant, the defendant offered to return the same. The plaintiff itself was a non-resident of the state of Kansas, and a resident of Detroit, Michigan, and it does not appear that the plaintiff had any resident agent in Kansas to whom the property could be

returned, until about the time when the defendant offered to return the same, and the defendant offered to return the same just as soon as he could find any agent of the plaintiff to whom he could make the offer.

Many objections are made by the plaintiff to the instructions given by the court to the jury, and to its refusal to give other instructions asked for by the plaintiff; but still we think the case was fairly submitted to the jury upon proper and sufficient instructions.

The principal questions involved in this case as it was tried in the court below were, whether the implement sold by the plaintiff's agent to the defendant was warranted to be sufficient for a particular purpose, or not, and whether it was in fact sufficient for such purpose, or was essentially insufficient. These questions were questions of fact, and we think they were fairly and properly submitted to the jury; and the jury found against the plaintiff and in favor of the defendant, and the court below approved the verdict, and we do not now think that we can disturb such verdict. The agent who sold the property to the defendant seems to have been an itinerant salesman, who could not afterward be found by the defendant; nor could any agent of the plaintiff be found by the defendant until the note sued on was presented to him for collection; and the defendant did not even know where the place of business of the plaintiff was.

We cannot say that any material error was committed by the trial court, and therefore its judgment will be affirmed.

All the Justices concurring.