# Richmond.

## M. K. FRANK v. EAST CAROLINA LUMBER COMPANY.

January 16, 1930.

Absent, Chichester, J.

The opinion states the case.

*James B. Denny* and *James G. Martin*, for the plaintiff in error.

*Venable, Miller, Pilcher & Parsons*, for the defendant in error.

EPES, J., delivered the opinion of the court.

This is a proceeding by attachment by East Carolina Lumber Company against M. K. Frank, a non-resident, as principal defendant, and the Norfolk-Southern Railroad Company and H. L. Lowery, as co-defendants, in which East Carolina Lumber Company sued to recover from M. K. Frank damages for the breach of a contract for the purchase from said company by said Frank of certain relaying rail and splice bars then in the plaintiff's tracks. The defendant appeared by counsel and defended the attachment. Jury tendered a verdict for $1,887.43 with interest thereon from December 13, 1927, in favor of the East Carolina Lumber Company against M. K. Frank. The defendant moved the court to set aside the verdict as contrary to the evidence and without evidence to support it, and also to render judgment for defendant for the same reasons; but the court overruled each of these motions and rendered judgment upon the verdict of the jury in favor of the plaintiff against the defendant.

The sole assignment of error is that the court erred in not setting aside the verdict of the jury and in not rendering final judgment for the defendant on the ground that the verdict was contrary to the law and evidence and without evidence to support it.

The contract herein questioned was made on December 30, 1926, and is evidenced by the following letter:

"NEW YORK, N. Y., December 30, 1926.

"MR. CHARLES H. TURNER, President,

"EAST CAROLINA LUMBER COMPANY, C. & L. C.

"NEWBERN, NORTH CAROLINA, C. & L. C.

"DEAR SIR:

"This will confirm conversation had with you in our office today, wherein we have agreed to purchase the following mileage of relaying rail and splice bars to match, subject to preliminary inspection being satisfactory; this inspection to be made within the first week in January, 1927:—and inspection to be made by our Mr. Dave Williams:

"Approximately ten track miles of thirty-pound rail and bars.

"Two to three miles of twenty-pound and twenty-five-pound rail and bars.

"Price: $20.50 per gross ton, f. o. b. cars Norfolk, Va.

"Shipping directions to be given immediately after preliminary inspection found to be satisfactory.

"Terms: Draft attached to bill of lading.

"It is also agreed that material is to be put on cars within 60 (sixty) days from date of shipping directions. Freight rate not to exceed $3.40 per N. T. to Norfolk, as per letter of J. F. Dalton, general freight agent of the Norfolk Southern Railroad Company, of December 13, 1926.

"Yours very truly,

"M. K. FRANK.

"Accepted:

"EAST CAROLINA LUMBER COMPANY,

"per C. A. H. Turner, Pt."

On January 10, 1927, Frank wrote plaintiff: "We

are satisfied with Mr. Williams' inspection of the rail, and we hereby agree to accept this rail that you now have in track that he has inspected. You may ship this rail to Norfolk, Va., for our account. In shipping same be sure that only one section of rail is loaded in each car by itself. You may draft on us through Seaboard National Bank of New York City, and I trust you will ship this material out promptly."

Due to the fact that the rail was levied on by the sheriff for taxes, and that the Norfolk Southern Railroad Company did not put into effect the $3.40 rate until on April 28, 1927, no shipments of rail were made until May 10, 1927. During the time of this delay the correspondence between the parties shows that, so far from cancelling the contract because of the delay, Frank was urging the East Carolina Lumber Company to ship the rail purchased under said contract, and the company was endeavoring to get the levy released so that it could ship the rail.

Mr. C. H. Turner, president of East Carolina Lumber Company, testifies that on May 1, 1927, he had an interview in New York with Frank, at which time it was fully understood that Frank was to take the entire trackage that had been inspected, that the only question at that time was how soon the rail could be gotten loaded and shipped and that it was considered by both Frank and himself to be to the benefit of both parties that no shipment should be made under the contract until the freight rate had been properly established. Frank admitted that he and Turner had an interview in New York about May 1, 1927, and testifies that it was understood no rails were to be shipped until ordered out by the defendant and after inspection by Mr. D. T. Williams.

On May 10th, May 12th, and May 16, 1927, one

car of rail was shipped to Frank at Norfolk, Va., and draft with bill of lading attached forwarded to the National Park Bank in New York city for presentation to the defendant at the Seaboard National Bank in New York city for payment.

These rails were not again inspected by Mr. Williams before being shipped. The correspondence shows that certain objections were raised by Frank to paying these drafts in full because of the fact that against his instructions one of the cars was loaded with more than one weight of rail, and the claim that the cars had in them broken and twisted rail, and in some cases the weights given on the bill of lading were wrong, and he also complained of the fact that the drafts were not sent direct to the Seaboard National Bank. However, these differences were adjusted and the drafts paid.

The correspondence between the parties between May 16th and May 27, 1927, shows that both parties thereto still treated the contract as in force, and that Frank was expecting future deliveries thereunder.

On May 16th, Frank wrote plaintiff: "You can readily understand that we cannot ship a mixed car of rails to our customers. We have to have each section loaded in a car by itself. * * * Please in the future see that this error does not occur again." On May 19th, Frank had written plaintiff complaining that the weights on the bills of lading were not correct; and on May 20th, C. H. Turner, president of East Carolina Lumber Company, replying thereto wrote defendant: "The weights that are on the bills of lading are the railroad weights and are put on by the Norfolk Southern Railroad Company, but if these do not comply with our contract I will try and get the certified scale tickets, however this seems to me making us only more trouble and spending a lot of time for nothing,

however, I am anxious if I can to please you, and want to do everything possible to facilitate all these matters and get this shipment completed soon as possible." On May 23rd, Frank writes plaintiff in part as follows: ."It would be better for you to make your drafts on us at Seaboard National Bank as per your terms in the contract, * * * and in the future I wish you would draw on the Seaboard National Bank, Broad and Beaver streets, the way we advised you. Mr. Williams advised me on his return that there would not be more than possibly one more carload of thirty-pound rail left on your track, and the balance of the rail are thirty-five-pound section. Now be very careful and do not load any thirty-five-pound rail.". On May 25th plaintiff wrote Frank: "Mr. Dixon, the man that is taking up and shipping the rail, says that we do not have any thirty-five-pound rail and that it is mostly all thirty-pound, therefore you better have your inspector come and stay here while it is being shipped so that we will not have any dispute about it; however, we will be very particular in shipping and see that we do not ship any thirty-five-pound and I sincerely hope that we will not have any more misunderstandings." On May 27th, Frank wrote plaintiff in part as follows: "Our rail measure three and three-eighths inches on the base which is the exact measurement of the thirty-five-pound rail that your Mr. Dixon calls thirty's, so kindly be careful and do not ship what you are not absolutely sure are thirty's, so that there will not be any holding up of the drafts."

The next letter which passed between the parties hereto is the letter of June 6, 1927, upon which the defendant places great stress:

"New York, N. Y., June 6, 1927.
"Mr. Charles H. Turner,
"East Carolina Lumber Company, C. & L. C.
"New Bern, North Carolina.
"Dear Sir:

"As per conversation had with you today, please do not load any more rail for us until further notice.

"Of course you understand that the contract has expired long ago, and we do not have any place to ship this rail. If you care to hold same for the next thirty to forty-five days, the market may pick up, and we can then take some more shipments, but at the present time, we would not care to pay for any more material.

"Very truly yours,
"M. K. Frank."

East Carolina Lumber Company appears not to have replied to this letter of June 6th until June 27th, when C. H. Turner, president, wrote Frank as follows:

"June 27, 1927.
"Mr. M. K. Frank,
"15 Park Row Bldg.,
"New York City.
"Dear Mr. Frank:

"What is the situation with you now about shipping a few cars of rail, say two cars a week, starting in in about two weeks. It takes about that length of time to get organized and started again.

"Will it be all right to ship one car of sixteen-pound at any time providing I can make out a full carload?

"Are you, or have you put in a claim for the demurrage on those three cars. You did not send me the paid claims and I thought perhaps you were doing this.

"With the writer's best regards, I am,
"Yours very truly,
"C. H. Turner."

On July 11th, Frank wrote plaintiff as follows:

"July 11, 1927.

"EAST CAROLINA LUMBER COMPANY,

"New Bern, North Carolina.

"Attention, Mr. C. H. TURNER, president.

"GENTLEMEN:

"We beg to advise you that business is still very quiet; things are not picking up at the present time, but look for some better improvement during the latter part of the month or first of August.

"Very truly yours,

"M. K. FRANK."

On July 15th, plaintiff wrote Frank that they were making arrangements to start taking up rail commencing the 18th, and hoped to ship one car by the 23rd. On July 23rd, plaintiff shipped Frank two cars of thirty-pound rail, and forwarded bills of lading with draft attached therefor through the Seaboard National Bank, New York. On July 25th, Frank wrote plaintiff: "We are very much surprised to receive your invoices for cars NS No. 10069, NS No. 10161 and we certainly will have to refuse payment of these drafts at the Seaboard National Bank when they are presented."

On July 28th, plaintiff wrote Frank expressing his surprise at his refusal of the two cars shipped on July 23rd and stating that these two cars would be followed by two more cars which were already loaded. On July 30th these two cars were shipped out and bills of lading with draft attached thereto forwarded through the Seaboard National Bank.

When the four cars of rail shipped on July 23rd and 30th arrived, Frank refused to accept them. The plaintiff sold them in Baltimore and is here suing for the difference between the contract price on these four

cars of rail and the price at which they were sold, together with certain other items of damage which plaintiff contends it has suffered by reason of Frank's breach of contract. C. H. Turner, president of the East Carolina Lumber Company, in his testimony denies that the contract was ever abandoned by his company or that any such suggestion had ever been made by any one connected with his company or by Frank.

Defendant contends that the whole case is in substance contained in the correspondence, and the case should have been decided on the face of the correspondence as a matter of law by the court; that the correspondence shows as a matter of law that the plaintiff breached the contract by failure to make shipment of all the rail within sixty days after it was given shipping instructions, and that whether plaintiff breached the contract or not, by failure to make shipment within sixty days after shipping instructions were given, both plaintiff and defendant mutually agreed that the contract was ended and cancelled.

We are of opinion that the correspondence neither established as a matter of law the fact that there had been such a breach of contract as entitled the defendant to refuse to accept the four cars of rail shipped on July 23rd and July 30, 1927, nor that both plaintiff and defendant had mutually agreed that the contract was ended and cancelled. Nor does the correspondence contain the whole case. The language of the letter of June 6, 1927, in which Frank says: "Of course you understand that the contract has expired long ago," upon which the defendant relies chiefly as establishing the fact that the contract had been ended and cancelled by mutual agreement, is in conflict with the attitude of Frank as expressed in his several letters

written during May, 1927, the last on May 27th, with the actions of the parties during May, 1927, with the testimony of Mr. C. H. Turner as to what took place in the interview he had with Frank on May 1, 1927, and with the express denial of Turner that there had been any cancellation or abandonment of the contract on the part of plaintiff.

The questions raised here were questions of fact. The case was properly submitted to jury, which has found a verdict which there is sufficient evidence in the record to support. Neither the trial court nor this court has the right to set aside the verdict of the jury as contrary to the evidence unless it is plainly contrary to the evidence or without evidence to support it. *Norfolk & W. Ry. Co.* v. *Thayer Co.*, 137 Va. 294, 119 S. E. 107.

As there is sufficient evidence in the record to support the verdict of the jury, the court made no error in refusing to set aside the verdict and enter judgment for the defendant.

*Affirmed.*