## Wytheville.

### ECONOMIC WATER HEATING CORPORATION v. DILLON SUPPLY COMPANY.

June 18, 1931.

Present, Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Scott, Lloyd & Scott* and *Aubrey R. Bowles, Jr.,* for the plaintiff in error.

*Christian & Barton* and *Wm. A. Moncure, Jr.,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Dillon Supply Company, a North Carolina corporation, brought an action by notice of motion against two Virginia corporations, the Economic Water Heating Corporation and the Manufacturers Patent Sales Corporation, for the refund of the purchase price of certain gas and oil water heaters which were sold to the Dillon Supply Company by Hiram T. Gates and William Gray, a partnership doing business as Keeton Heater Company.

The trial resulted in a verdict and judgment in favor of the plaintiff against the Economic Water Heating Corporation. From this judgment a writ of error was granted. The jury having returned a verdict in behalf of the Manufacturers Patent Sales Corporation, and no exception being taken thereto, the order of the court dismissing the action as to it is final.

The errors assigned are: (1) That the evidence was not responsive to the allegations of the notice; (2) that the Economic Water Heating Corporation was not bound by the representations claimed to have been made by Gates; and (3) the Economic Water Heating Corporation was not liable for the refund of the purchase price of the heaters.

The opinion of the trial judge, the Honorable Frank T. Sutton, Jr., so satisfactorily disposes of these assignments of error that we adopt as our own his opinion, as follows:

"The court is of the opinion: (1) There was sufficient evidence to warrant a finding by the jury that the contract had been assumed; (2) the notice of motion was sufficiently broad to allow proof of the assumption of the contract.

"In giving its reasons for the above finding, the court does not find it necessary to recite or to review all of the testimony in this case, but it refers only to certain portions which warrant its finding.

"The original order for the gas heaters was given under date of May 4, 1927. It does not purport to contain all of the agreement between the parties, therefore parol evidence was properly admitted to show those phases of the agreement not intended to be covered in the written order. This order, it will be noted, was for one hundred and fifty (150) heaters to be shipped at once. On May 7, 1927, the Dillon Supply Company, Incorporated, wrote the Keeton Heater Company as follows:

" 'We will thank you to make two (2) shipments * * * that is, fifty (50) gas heaters and twenty-five (25) oil heaters, as stated, sometime next week * * * and hold the balance in abeyance until we give you further shipping instructions.'

"It was urged that this letter was a cancellation of the contract for all over one hundred (100) heaters. Such a conclusion is inconsistent and entirely at variance with the paragraph quoted above, to-wit:

" 'We would thank you to make *two* (2) shipments.' (Italics supplied.)

"This letter called for one (1) shipment only at that time, and was a request to make the second (2nd) shipment upon further notice. Nothing in the conduct of the parties, until after a dispute arose as to whether the articles came up to representation, could be construed as a cancellation of the second

shipment requested as above. This was a jury question. See *Frank* v. *East Carolina Lumber Co.,* 153 Va. 649, 151 S. E. 135, 138.

"It will be recalled that the Keeton Heater Company was a partnership composed of William Gray and Hiram P. Gates, and that they entered into a contract with Henry H. Keeton acquiring the rights to manufacture and sell this particular heater. This contract was dated March 19, 1927. Mr. Gray when on the stand testified that at the time they made the contract with Keeton they had it in mind to form a corporation for the sale of these heaters. In fact, the terms of this contract provided for the formation of a corporation to handle them. On June 7, 1927, the Economic Water Heater Corporation was chartered. On that day a meeting of its incorporators was held. The charter was accepted and a prospectus and subscription list combined was presented to the meeting, approved and accepted and made a part of the records of the corporation. The first paragraph of the prospectus reads:

" 'Prospectus of a corporation to handle the Keeton Heaters and Burners, the Brown Soap Pulverizers and the Smith Automobile Lights.'

"Another paragraph of this prospectus reads as follows:

" 'Eight hundred (800) shares of the common stock of the par value of one hundred ($100.00) dollars shall be issued to William Gray and Hiram T. Gates or their assigns—upon the transfer to the corporation of a contract they have with Henry H. Keeton, under which they have the exclusive manufacturing and selling rights of the Keeton Heaters and the Keeton Burners, and their rights in the other things mentioned.'

"It will be noted that at the stockholders' meeting, this prospectus and subscription list (which necessarily includes all of its terms) was approved and accepted.

"A meeting of the directors of the Economic Water Heater Corporation was held on June 7, 1927, at which meeting William Gray was present as a director and was elected president

and assumed the chair. A written proposition from H. T. Gates and William Gray to sell to the corporation their interest in certain devices known as the Keeton water heaters, together with all contracts made for the manufacture and sale of said devices as set out in said proposition, together with other property therein mentioned, was received and accepted, and the resolution recited that said Gray and Gates should receive the sum of * * * dollars and eight hundred (800) shares of the common stock for said property. This same resolution recites that in the judgment of this board the fair value of the rights and privileges proposed to be assigned to this company by said Gray and Gates is the sum of $15,000.00. The resolution does not therein segregate the value placed upon the Keeton heater business, but from a reading of the entire proposition and the cash sum therein mentioned of $8,500.00 for a part of said property, it would be a reasonable inference that the Keeton heater business was valued at $6,500.00. The written proposition of Gray and Gates, above referred to, contained this language:

" 'All orders now on hand for the sale and distribution thereof, a list of which is hereto attached.'

"The records of the corporation do not show that the list was ever attached. William Gray, when testifying, said that there was such a list in existence, but it had been lost and that it did not contain the order given by the plaintiff. There was evidence, however, hereinafter adverted to, from which the jury might have been warranted in finding that fact differently.

"On June 23, 1927, the Dillon Supply Company made complaint for the first time that the heaters purchased were not satisfactory, and did not come up to representation. This letter was written to the Manufacturers Patent and Sales Corporation. It was followed by a letter of July 12, 1927, of the same tenor, directed to the Economic Water Heater Corporation, and by another letter to the Economic Water Heater Corporation, dated July 20, 1927, and by still another letter to the same

company, under date of August 24, 1927, still complaining. On October 13, 1927, the Economic Water Heater Corporation replied to these various communications, not denying that they had assumed the contract originally made with the Keeton Heater Company, but attempting to avoid responsibility on entirely different grounds. In this letter the Economic Water Heater Corporation uses the following expressions:

" '*Our sales manager, Mr. Hiram T. Gates,* advises us that when he first called on you, etc.'

" 'You declined to *sign our sales contract,* stating you preferred to use your own.'

" 'A few days after *your order was received at this office,* you wrote us, under date of May 7th, requesting, etc., * * * *and in compliance with your letter of May 7th, we did not* ship you the fifty (50) oil heaters.'

" '*Our Mr. Gates* advises us that he explained to you, etc.'

" 'And *your order* for the one hundred and fifty devices given Mr. Gates, was accepted by him *and us* in good faith.'

" '*Our Mr. Gates* hopes to be in North Carolina in the next few days, at which time he will call on you.'

"In another letter dated November 1, 1927, from the Economic Water Heater Corporation to the Dillon Supply Company relative to this same matter, the following expressions are found:

" 'We have taken up the matter with *our Mr. Gates* regarding shipment of Keeton heaters made you some months ago.'

"And then after stating that the order contained no reservations or stipulations and refusing to take the devices back, the letter continues:

" 'However, we wish to be just and fair in the matter,' etc.

"Nothing in this letter denies the assumption of the contract, and in a later letter dated December 21, 1927, to the Dillon Supply Company relative to the same matter this expression occurs:

" 'The delay in replying * * * has been due to the absence from the city of our Mr. Gates.'

(Above italics all supplied.)

"Nothing in this letter denied the assumption of the contract.

"In *Lehigh, etc.* v. *Virginia Steamship Co.*, 132 Va. page 257, page 271, 111 S. E. 104, 109, the court, in dealing with the question of the assumption of a contract by one corporation, the contract having been originally made with another, states:

" 'We cannot sustain the contention of the plaintiff in error that there is no evidence to prove the assumption of the original contract by that company. The conduct of its own officers in taking up the contract where the Virginia Portland Cement Company left it, and conducting all of its correspondence in its own name, and the payment by it of amounts due under the contract at rates therein stated, and failure to suggest, when the claim sued on was asserted against it by the steamship company, that the liability, if any, was against the Virginia Portland Cement Company, was sufficient evidence * * *.'

"In the instant case there was evidence that as early as March 19th, William Gray had it in mind to organize a company for the sale of these heaters. When the defendant company was organized on June 2nd the combined prospectus and subscription list stated, as one of its objects, the manufacture and sale of these heaters. Thereafter, the defendant corporation conducted correspondence relative to the sale in question in its own name. It failed to suggest that the liability was not its, but in its correspondence it endeavored to avoid liability on another ground. It sent its agent to appease the dissatisfied customer. In its correspondence, extracts from which are quoted above, and after complaint had been made that the heaters did not function, it constantly referred to Mr. Gates, who made the original sale, as "our agent" and it referred to the contract, as above shown, in such terms as to leave no rea-

sonable doubt but that it treated it as its own. Under these circumstances, the court is of the opinion that there was ample evidence to warrant the jury in taking the view that the contract had been assumed by the defendant corporation.

"But it is urged that the pleadings were not broad enough to admit the proof of an assumption. The action was instituted by a notice of motion for judgment, which the courts have so often said must be viewed with leniency and construed liberally. In *Rinehart* v. *Pirkey,* 126 Va. 353 (101 S. E. 353, 355), it was said:

" 'If the notice be such that the defendant cannot mistake its object, it will be sufficient.'

"Reference to the notice of motion will show that it uses the language:

" 'In April or May of the year 1927 your salesman or agent, Mr. Hiram P. Gates, called on the undersigned * * *; your agent represented to the undersigned that your heaters would, * * *.'

"This notice of motion followed the correspondence above referred to, where so frequently the defendant corporation referred to Mr. Hiram P. Gates as its agent and representative and to the contract as its contract, that the plaintiff in preparing its notice of motion fell into and used the same expression, and was justified, in view of the attitude assumed then by the defendant corporation, that it recognized it as its contract and the acts of its agent assumed by it.

"It seems clear, therefore, that the defendant could not have mistaken the object of this motion, and was not surprised or embarrassed in the conduct of its defense when evidence of the assumption was offered. The courts more and more look to the trial of an action at law, not as a battle of the pleaders, but more as a trial of substantive rights of the parties, and should not regard seriously objections, more technical than real, which do not operate to the prejudice of the substantial rights of a litigant.

"When a party assumes the contract, or undertaking, of another he makes it his contract. A pleading, therefore, that describes a contract which has been assumed by the defendant as the *defendant's* contract, while not the clearest and most definite in point of detail, yet is not incorrect nor deficient in its allegation of liability. If the defendant wanted more definite information as to the character of his liability, he could, upon request, have had a bill of particulars as provided by Code 6091."

The defendant objects to two instructions given by the court at the request of the plaintiff. Instruction No. 6 told the jury that if they believed from the evidence that the heaters did not measure up to the warranty, and the plaintiff desired to have its money refunded, it was the duty of the plaintiff to so notify the defendant promptly and make reasonable effort to return the heaters to the original vendor, or its assignee. Instruction No. 7 told the jury that if they believed that the plaintiff was entitled to recover, then the measure of damages was the net price paid by the plaintiff for the heaters which it had made a reasonable effort to return.

The circumstances under which this contract of sale was made were that Gates called upon the Dillon Supply Company and attempted to sell the heaters. The company at first refused to buy. Gates then, with the permission of the company, canvassed the trade both in Raleigh and Durham, North Carolina, and obtained quite a number of orders. He turned these orders over to the Dillon Supply Company, who thereupon agreed to buy a greater number of heaters than Gates had obtained orders for. In so doing, the plaintiff relied upon the *bona fides* of these orders given by Gates and his statement that: "The heaters will do the saving; I guarantee that; if they don't we will take them back."

The evidence for the plaintiff shows that at the time it first made the offer to return the heaters all of them were available to it for that purpose. It further appears that after receiving

from the plaintiff the letter of July 12th, the defendant sent Gates to see the plaintiff and he called upon the parties to whom the Dillon Supply Company had delivered the heaters and endeavored to adjust the complaints. Dillon Supply Company stated to the plaintiff's agent and wrote the defendants that they would make another attempt to dispose of the heaters, and if that failed they would expect the plaintiff to accept return of those on hand, pursuant to their warranty. On this occasion Gates reiterated his promise to accept return of the heaters.

At the time the action was instituted there were available to the plaintiff ninety-five of the 100 heaters shipped. It is not clear from the evidence whether the five heaters short were in use by consumers or whether they had been misplaced by the plaintiff. The defendant contends that the plaintiff had sold them at a profit to the retail trade and retained the profit, and that inasmuch as there was no actual return of the heaters and the plaintiff was not in a position to return them all, the correct measure of damages was the difference in the market value of the heaters as warranted and the actual value as received, and that there was no evidence to show the actual value, and, therefore, instructions 6 and 7 were erroneous.

"If, upon a sale with a warranty, or if, by the special terms of the contract, the vendee is at liberty to return the article sold, an offer to return it is equivalent to an offer accepted by the vendor, and in that case the contract is rescinded and at an end, which is a sufficient defense to an action brought by the vendor for the purchase money, or to enable the vendee to maintain an action for money had and received, in case the purchase money has been paid." *Thornton* v. *Wynn,* 25 U. S. 183, at page 193, 6 L. Ed. 595.

The warranty was that if the heaters were not as represented, then the defendant would accept their return. The plaintiff fulfilled its duty by notifying the defendant of the breach of the warranty and offering to return the heaters.

The defendant declined to accept. The heaters were held thereafter at the risk of seller and subject to its order. *Gale Sulky Harrow Mfg. Co.* v. *Stark,* 45 Kan. 606, 26 P. 8, 23 Am. St. Rep. 739.

The heaters were purchased by the buyer with the knowledge of the seller that they would be resold; the defect in them could not be ascertained until they reached the hands of the ultimate consumer. Under such circumstances, the failure of the plaintiff to return all of the heaters does not deprive it of the right to return the number remaining in its possession and account for the proceeds of those sold. *Bunch* v. *Weil·Bros.,* 72 Ark. 343, 80 S. W. 582, 65 L. R. A. 80.

The warranty was as to each of the 100 heaters delivered, and if five of them came up to the warranty, were resold by the plaintiff to the ultimate consumers and they made no complaint, and the seller has received the agreed purchase price for the five heaters, a recovery cannot be denied the plaintiff because a part of the heaters were satisfactory and a part were not. It was clearly contemplated by the parties that the plaintiff should return only such heaters as failed to fulfil the conditions of the warranty. In 25 R. C. L., section 267, page 1444, it is stated: "Where the contract for the sale of a number of articles is several as to each article, the buyer may accept and retain those which conform to the requirements of the contract and reject those which do not."

Our conclusion, therefore, is that the judgment should be affirmed.

*Affirmed.*