## CIRCUIT COURT OF FAIRFAX COUNTY

Real Estate Associates
of Virginia, Inc., et al.

v.

Ludlow King, III, et al.

Case No. (Law) 71845

By JUDGE JOHANNA L. FITZPATRICK

June 23, 1986

This matter comes before the Court on Defendants' Demurrer to Counts II and III of Plaintiffs' Amended Motion for Judgment and on Plaintiffs' Demurrer to Defendants' Counter-Claim. After reviewing the pleadings, memoranda and authorities, it is the opinion of the Court that Defendants' Demurrer is sustained with leave to amend Count III and Plaintiffs' Demurrer to Defendants' Counter-Claim is overruled.

Count II of Plaintiffs' Amended Motion for Judgment is a claim by Real Estate Associates of Virginia, Inc. ("REA") against Ludlow King, III, and King Homes, Inc. ("King") for intentional interference with contractual obligations. While it is unclear from the Amended Motion for Judgment, Plaintiffs' Reply Brief makes it clear that the contract with which King allegedly interfered is the commission agreement between REA and Battlefield Builders, Inc ("Battlefield").

King's breach of the sales contract with Battlefield prevented REA from collecting its commission from Battle-

field because settlement on the contract was a condition precedent to REA collecting under the commission agreement with Battlefield. However, King's breach of the sales contract did not give REA a cause of action against King. The frustration of the commission agreement was simply a collateral effect of King's breach and did not make King liable in tort to REA.

King's conduct following its breach of the contract with Battlefield is irrelevant to the question of whether REA has a cause of action for intentional interference with the commission agreement. Once King breached, REA no longer had a right to a commission because the condition precedent was rendered impossible. At that point, while King may have been liable for its breach, it was free to sell the property to a third party without incurring any liability to REA. The fact that King eventually sold to Triangle does not add anything to REA's intentional interference claim because there was nothing left with which King could possibly interfere.

In *Chaves v. Johnson*, 230 Va. 112 (1985), the Virginia Supreme Court set out the elements required for a *prima facie* showing of the intentional interference tort as follows:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Chaves*, at 120.

REA's claim is missing the essential element of an "intentional interference." The only conduct on King's part which frustrated REA's commission agreement with Battlefield was King's breach of its sales contract with Battlefield. This cannot be the basis of a claim for intentional interference. Consequently, King's Demurrer to Count II must be sustained.

Count III of Plaintiff's Amended Motion for Judgment is a claim by REA against King and Triangle for conspiracy

to injure REA in its trade or business. REA's claim is based on Va. Code §§ 18.2-499 and 500 which provide that a plaintiff may recover where two or more persons act in concert to "willfully and maliciously" injure the plaintiff in his business. In the case at bar, while REA has alleged that King and Triangle acted willfully and maliciously (para. 20, Amended Motion for Judgment), they have failed to allege sufficient facts to support the allegation.

For the purposes of demurrer, the Court is only obligated to consider facts which are well pled. *Penick v. Decker*, 228 Va. 161 (1984). REA's statement that King and Triangle acted willfully and maliciously does not qualify as a well pled fact, but rather states a bare conclusion of law, and the Court is free to disregard it in ruling on Defendants' Demurrer.

REA has not alleged facts indicating willful and malicious conduct by King and Triangle. Consequently, the Demurrer to Count III must be sustained. However, Plaintiff will be given leave to amend Count III to allege facts in support of the willful and malicious conclusion.

Finally, with respect to Plaintiffs' Demurrer to Defendants' Counter-Claim, Plaintiffs' Demurrer is not well-taken. King has alleged that if Greenhorne and O'Mara ("Greenhorne") is a valid assignee of Battlefield's rights under the sales contract, then Greenhorn is also responsible for Battlefield's obligations under the contract. Specifically, King is seeking to collect on a promissory note given by Battlefield which would become due and payable should Battlefield default on the contract. King has alleged the default by Battlefield and is now attempting to collect from Greenhorne as Battlefield's assignee.

Greenhorne relies on Va. Code § 8.01-423 in support of the Demurrer. Section 8.01-423 only applies where the plaintiff claims as assignee *and* the defendant's claim exceeds plaintiff's demand. Where, as here, defendant's claim does not exceed plaintiff's demand, the statute has no application.

The law is clear that when a party assumes the contract of another, he makes it his contract. *Economic Water Heating Corp. v. Dillon Supply Co.*, 156 Va. 597 (1931). Taking King's allegations as true, he has stated a cause

of action against Greenhorne, and Greenhorne's Demurrer must be overruled.

For the foregoing reasons, Defendants' Demurrer to Counts II and III of Plaintiffs' Amended Motion for Judgment are hereby sustained with leave to amend Count III, and Plaintiffs' Demurrer to Defendants' Counter-Claim is hereby overruled.

### January 27, 1987

This case involves a real estate contract whereby Battlefield Builders, Inc., conditionally agreed to purchase 21 lots in Fairfax county from King Homes, Inc. Default is alleged by both Buyer's assignee, Greenhorne & O'Mara, and Seller. An interpretation of the terms of the contract is of course essential to resolution of this dispute.

The subject contract, executed March 26, 1984, required King Homes to deliver "finished lots" in mid-May to Battlefield, which would then proceed to settlement within fifteen days. The contract gave Battlefield the unilateral right to delay settlement until King Homes's work was complete and further provided that if late delivery would result in settlement after July 1, 1984, Battlefield could declare the contract void. By express provision, time was "of the essence" in the contract.

Work on the lots was incomplete on July 1, and an addendum was executed on July 6 which extended the delivery date until August 15, 1984. Battlefield's right to declare the contract void apparently lapsed; however, all other terms of the contract remained in effect, and Battlefield still could unilaterally delay settlement until King Homes's work was done.

The lots were not in a "finished" condition in August, and a second addendum was executed on September 4, 1984. That addendum allowed Battlefield to begin home construction and also provided for an escrow to be established for incomplete work. The second addendum did not include a specific delivery date but instead established a settlement "window": "In no event will settlement be held before October 2, 1984, but in no event will closing take place after October 10, 1984." This provision on its face extinguished Battlefield's right to unilaterally delay settlement.

On October 11, 1984, the lots were not in a "finished" condition, the escrow had not been established, and the parties had not gone to settlement. No further addenda were executed. In my opinion, since time was still "of the essence" in this agreement, the modified but unambiguous contract ceased to exist at that time.

The only issue, then, is whether a breach occurred on or before October 10, 1984. In a bi-lateral contract such as this one, each party's obligation to perform is dependent upon the other party's tender of performance. *E.g., Robertson v. Robertson*, 24 Va. (3 Rand.) 68 (1824). *See* 3A *Corbin on Contracts* § 634 (1960). If neither party performs, neither party is in default. This settled rule of law seems particularly significant where time is "of the essence" in the contract. Consequently, when neither battlefield nor King Homes had performed by October 10, 1984, the contract simply came to an end without breach by either party.

Plaintiff presented evidence of numerous oral agreements which allegedly modified and/or explained the written documents. To the extent that this evidence consisted of prior or contemporaneous statements regarding the original contract or the addenda, it is barred by the parol evidence rule, a doctrine to which Virginia strictly adheres. *See, e.g., Amos v. Coffee*, 228 Va. 88 (1984); *Pulaski National Bank v. Harrell*, 203 Va. 227, 233 (1962). Moreover, to the extent the evidence tended to prove a different contract than the written one, it is barred by the statute of frauds. *See* Va. Code § 11-2(6). I find neither ambiguity nor subsequent written memoranda sufficient to bring the evidence outside the scope of these exclusionary rules. Therefore, I could not and did not consider any of the oral evidence which purported to vary the terms of the integrated contract.

Neither party defaulted on its contractual obligations. Judgment is for the defendant on the main claim and for the counterclaim defendant on the counterclaim.