**Norfolk**

STATES ROOFING CORPORATION and

THE HOME INSURANCE COMPANY

v.

BUSH CONSTRUCTION CORPORATION and

MARYLAND CASUALTY COMPANY

No. 2062-91-1

Decided January 19, 1993

COUNSEL

Peter Manson, for appellant.

William E. Baggs, for appellee.

OPINION

**BRAY, J.**—States Roofing Corporation (States) appeals the finding of the Workers' Compensation Commission (commission) that it was the "statutory employer" of Elvis Arnold Spence (claimant). States argues that the Workers' Compensation Act (Act) requires that this relationship be supported by "the existence of a contract between contractors," a circumstance which it denies in this instance. We agree with the commission and affirm its decision.

The record discloses that Bush Construction Corporation (Bush) was "employed as the general contractor on a construction project," and, thereafter, subcontracted a portion of its undertaking to Eastern Roofing Corporation (Eastern). Eastern, "in turn," subcontracted a measure of these responsibilities to Waymar Roofing and Sheetmetal, Inc. (Waymar), and Bush agreed to pay Eastern and Waymar, jointly.

Prior to its agreement with Bush, Eastern had assigned "all . . . accounts and contract rights, now existing or hereafter acquired," and

other assets, to Marepcon Financial Corporation (Marepcon), a "wholly owned subsidiary of Norshipco," as security for "all present and future indebtedness" of Eastern to Marepcon.[1]

On February 9, 1990, after contracting with Bush, Eastern "defaulted on its financial obligations to Marepcon" and Marepcon foreclosed, acquiring "all" of Eastern's assets. These assets were then immediately "sold by" Marepcon to States, another "wholly owned subsidiary of Norshipco," "created the same day" to facilitate Norshipco's "identification and collection" of "all the money that was available from the [Eastern] receivables," and "minimize or . . . avoid" additional financial loss on the Eastern credit. States anticipated that this effort would require its performance on certain of Eastern's contracts and possible continuation "as a roofing company," if the undertaking proved profitable. Consequently, States immediately assumed occupancy of Eastern's business premises and hired "most" of its former employees.

Within a week of this transaction, Bush received correspondence from States advising that it had "purchased the equipment, trade accounts receivable, contract rights and inventory of Eastern," but "did not assume any liability or obligation of Eastern." This was followed by further correspondence to Bush from W. Doyle Payne, Jr. (Payne), President of States, which "announce[d] the formation of States," "offer[ed] the highest quality work" and assured that States was "looking forward to working with [Bush] on present and future contracts," "eagerly awaiting the opportunity to work with [Bush]."

Later, Payne personally communicated these intentions directly to Bush during a telephone conversation with its vice-president. Payne confirmed that States "wanted to complete the [Eastern] contract," was "going to take care of [Bush's] work," "hope[d] to get more work with [Bush]" and "would like to plan on being one of [Bush's] subcontractors." Consistent with this promise, States shortly began to fulfill Eastern's obligations to Bush, submitted to Bush "requisition forms" for payment and accepted "checks payable to States Roofing and/or States Roofing and Waymar," all in accordance with the Eastern contract.

---

[1] This assignment was effected by a "GENERAL ASSIGNMENT ACCOUNTS AND CONTRACT RIGHTS SECURITY AGREEMENT" between Eastern, as "Assignor," and Marepcon, acting under a fictitious name, as "Lender."

In March 1990, Bush's "superintendent" contacted States in an effort to "get [Waymar] back on the job to finish their work." In response, States' vice-president complained to Waymar that States, "as well as, Bush," had been "unable to get . . . information about why work on this project has stopped" and notified Waymar "to proceed" within "72 hours . . . or the contract w[ould] become void." Waymar assured States "that the work would be completed by April 7" and "put the men back on the job."

Thereafter, claimant, Waymar's employee, suffered a compensable injury while employed on the Bush project. Following this accident, States ordered Waymar not to "come [back] on the job" and completed the "work covered under [Waymar's] subcontract" with Eastern and Eastern's contract with Bush.

On June 8, 1990, claimant filed an application for hearing with the commission. Having determined that Waymar was an uninsured employer, the commission added States, Bush and Eastern as parties defendant. After examining the several contractual relationships, the commission concluded that States "fully assumed the role of Eastern," "including Eastern's liability as statutory employer," "both in terms of its relationship with Bush and with Waymar."

■ On appellate review, we must construe the evidence in the light most favorable to the party prevailing below. *Crisp v. Brown's Tysons Corner Dodge, Inc.*, 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). Factual findings by the commission, which are supported by credible evidence, are conclusive and binding upon this Court on appeal. *Rose v. Red's Hitch & Trailer Servs., Inc.*, 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990); *Commonwealth v. Powell*, 2 Va. App. 712, 714, 347 S.E.2d 532, 533 (1986).

■ Code § 65.2-302 (former Code § 65.1-29 to 65.1-31) provides that a "contractor" becomes the "statutory employer" of its subcontractor's employees whenever it engages such "[subcontractor] . . . for the execution or performance . . . of the whole or any part of the work undertaken" by the contractor and, therefore, is "liable to pay to *any* worker employed in the work any compensation under [the Act]" for which it "would have been liable . . . if that worker had been immediately employed" by such contractor. (emphasis added). The subcontractor similarly becomes the statutory employer of a sub-subcontractor's employees. Code § 65.2-302. Thus, employees of an uninsured sub-subcontractor may look to the subcontractor, and to the general

contractor, for coverage, although recovery is not permitted from both. Code §§ 65.2-302, 65.2-303; *see also A.G. Van Metre, Jr., Inc. v. Gandy*, 7 Va. App. 207, 210, 372 S.E.2d 198, 200-01 (1988).

States contends, however, that the liability of a statutory employer attaches only to Bush in this instance, because the requisite contractual relationship did not exist between States and either Bush or Waymar. We disagree.

█ Generally, " 'where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor.' " *City of Richmond v. Madison Management Group, Inc.*, 918 F.2d 438, 450 (4th Cir. 1990) (quoting 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 7122, at 188 (rev. perm. ed. 1983)). This prevailing view has been the rule in Virginia for many years. *See People's Nat'l Bank v. Morris*, 152 Va. 814, 819, 148 S.E. 828, 829 (1929); *see also Crawford Harbor Assocs. v. Blake Constr. Co.*, 661 F. Supp. 880, 883 (E.D. Va. 1987). However, the "purchasing corporation" becomes liable for the obligations of the "selling corporation" when it appears that

> (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is fraudulent in fact.

*Harris v. T.I., Inc.*, 243 Va. 63, 70, 413 S.E.2d 605, 609 (1992); *Crawford Harbor Assocs.*, 661 F. Supp. at 883; *Pepper v. Dixie Splint Coal Co.*, 165 Va. 179, 191, 181 S.E. 406, 410 (1935); *People's Nat'l Bank*, 152 Va. at 819, 148 S.E. at 829.

In *City of Richmond*, the Fourth Circuit concluded that the evidence was sufficient to support a finding that GHA, the purchasing corporation, "implicitly assumed" the liabilities of Interpace, the selling corporation. 918 F.2d at 451. Noting that, among other things, GHA "took credit for Interpace's work on the project," "assumed responsibility for completing the project," "made efforts to collect money under the project," "participated in repairs" on the project, and retained many Interpace employees, the court concluded that the evidence "support[ed] an inference of GHA's implicit assumption of liability." *Id.* It described this determination as "necessarily fact-bound." *Id.* at 451 n.11.

States' conduct here similarly manifested an implied agreement to assume Eastern's contractual liabilities with Waymar and Bush. States purchased Eastern's equipment, accounts receivable, contract rights and inventory, occupied its business premises and hired "most" of its former employees. Payne, States' President, pledged "to complete the [Eastern] contract" with Bush, "to take care of [Bush's] work . . . to get more work with [Bush]" and resumed the work. At Bush's request, States demanded that Waymar perform under the Eastern contract and threatened termination in the event of default. When Waymar withdrew from the project following claimant's injury, States per-·formed "under [Waymar's] subcontract." Finally, as the work progressed, States prepared and submitted "requisition forms" to Bush, seeking and receiving payment pursuant to the Eastern contract.

Under such circumstances, States' reliance upon *Progressive Construction Co. v. Thumm,* 209 Va. 24, 161 S.E.2d 687 (1968), is misplaced. In *Progressive,* the evidence failed as a matter of law to prove the existence of a contract because there was neither a "distinct intention common to both" parties nor a common understanding as to contract terms. *Id.* at 30-31, 161 S.E.2d at 691. In contrast, the conduct of all parties in this instance manifested a clear understanding that States had assumed the Eastern contracts with both Bush and Waymar. States "referred to the contract[s] . . . in such terms as to leave no reasonable doubt but that it treated [them] as its own" and all parties acquiesced in the relationship. *Economic Water Heating Corp. v. Dillon Supply Co.,* 156 Va. 597, 604-05, 159 S.E. 78, 80 (1931). "When a party assumes the contract, or undertaking, of another he makes it his contract." *Id.* at 606, 159 S.E. at 81.

We thus find ample evidence to warrant the commission's conclusion that Eastern's contracts with Bush and Waymar were assumed by States, and that States was the statutory employer of claimant at the time of his injury.

Accordingly, the decision of the commission is affirmed.

*Affirmed.*

Koontz, C.J., and Benton, J., concurred.