C. RICHARD BOGESE BUILDER, INC.

v.

ANTONIO L. ROBERTSON, et al.

No. 1535-93-2

Decided February 15, 1994

COUNSEL

Sarah Y. M. Kirby (Mary Louise Kramer; Sands, Anderson, Marks & Miller, on briefs), for appellant.

Gerald G. Lutkenhaus (Law Offices of Gerald G. Lutkenhaus, on brief), for appellee, Antonio L. Robertson.

Christopher D. Eib, Assistant Attorney General (Stephen D. Rosenthal, Attorney General; Mary Yancey Spencer, Deputy Attorney General, on brief), for appellee, Uninsured Employers' Fund.

OPINION

ELDER, J.—C. Richard Bogese Builders, Inc. (hereinafter Bogese) appeals the Workers' Compensation Commission's award of temporary total disability benefits and permanent partial disability benefits to Antonio L. Robertson. On appeal, it argues that the commission erred in finding (1) that it was the general contractor on the job on which Robertson was injured; (2) that it was Robertson's statutory employer; (3) that Robertson was entitled to benefits for the period prior to his giving notice of the accident to Bogese; and (4) that the delay in giving notice did not bar recovery because the delay was reasonable and Bogese suffered no prejudice from the delay. For the reasons that follow, we affirm the commission's award.

I.

In 1991, Don Flack contracted with Bogese, whose owner was his personal friend and a general contractor, to construct a house for Flack on a lot owned by Bogese. Bogese itemized the construction costs on a project-by-project basis (*i.e.*, foundation work, framing, electrical work, plumbing) and agreed to allow Flack, who was an employee of a building supply company and therefore had a variety of contacts in the building industry, to select subcontractors to do specific projects if he could find someone else (including himself) to complete it at a cost lower than that itemized by Bogese. Bogese would then credit any savings to reduce the final purchase price of the home. Bogese arranged the construction and permanent loans, obtained the building permit on which it was listed as the general contractor, ap-

proved or disapproved of all subcontractors located by Flack, monitored their work, and remained responsible for seeing that the construction complied with relevant building codes. In addition, Bogese retained ownership of the lot during construction and paid all subcontractors after inspecting their completed work.

Pursuant to the work-equity arrangement, Flack contacted Richard Sears, of Sta-Dri Custom Builders, to prepare the lot and footings for the construction of the house. Richard Bogese, owner of Bogese, then met Sears at the lot and showed him how to comply with the setback rules. Sears testified that Richard Bogese told him "where the house would actually be sitting," but Richard Bogese testified that it was up to Flack and Sears to "put the house where they wanted it." Bogese hired an engineer to help rectify problems which arose with the footers, and Bogese paid Sears upon satisfactory completion of the work. Richard Bogese and Sears met at the site a total of three to five times. On December 5, 1991, the first day of Sears' work, Antonio Robertson, an employee of Sears, was injured while working at the site. Robertson reported his injury to Sears, his immediate employer, and Sears reported it to Flack. Flack and Sears both testified that they believed they notified Bogese but could not be certain.

Sears instructed Robertson that Lambert Construction was the general contractor for that site and that Robertson should report his claim to that company. In December of 1991, within two weeks of his release from the hospital, Robertson learned that Lambert was not the general contractor. When he informed Sears of this fact, Sears initially acted surprised but then admitted that he might be suspected of insurance fraud based on the false information he had given Robertson. However, Sears volunteered no additional information about the identity of the general contractor. Robertson employed a lawyer and filed a claim against Sears for compensation benefits. Through interrogatories of April 17, 1992, Robertson learned of Bogese's role in the construction after he had filed his application for benefits and hired an attorney. On April 30, 1992, within two weeks of the discovery, he gave notice to Bogese.

The commission found that Bogese, as opposed to Flack, was the general contractor on this project and was also claimant's statutory employer pursuant to Code § 65.2-302. It also found as a fact that Bogese did not receive notice of the injury until April 30, 1992, but that claimant's delay in notifying him was reasonable because claimant himself had been misled as to the identity of the general con-

tractor and notified Bogese within two weeks of being advised of this fact. Finally, the commission found nothing in the record to show that Bogese had been prejudiced by this late notice. It then entered an award against Sears and Bogese and in favor of claimant for temporary total disability benefits for December 6, 1991, to April 5, 1992. It also entered an award for permanent partial disability benefits for April 6, 1992, through August 6, 1992.

## II.

## A.

■ The critical issue in this case is whether the evidence supports the commission's finding that Bogese was Robertson's statutory employer under Code § 65.2-302. The decisions of the commission as to questions of fact are conclusive and binding upon this Court if supported by credible evidence. Code § 65.2-706; *see Manassas Ice & Fuel Co. v. Farrar*, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991). We must view the evidence in the light most favorable to the prevailing party below, and "[t]he fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the commission's finding." *Manassas*, 13 Va. App. at 229, 409 S.E.2d at 826 (citations omitted).

■ Code § 65.2-302 provides as follows:

A. When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

B. When any person (referred to in this section as "contractor") contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under the subcontractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any worker employed in the

work any compensation under this title which he would have been liable to pay if that worker had been immediately employed by him.

"While these sections place liability under the Act on different people, they do have the same purpose and effect, and are in reality almost identical in operation." *Snead v. Nello L. Teer Co.*, 353 F. Supp. 434, 435 (W.D. Va. 1973) (discussing several predecessor statutes of § 65.2-302, which contain almost identical language). Taken together, these sections make

the owner liable if the workman, no matter how far down the line, is doing work which the owner has undertaken to perform as a part of his own trade, business or occupation. But if the work which the workman is doing is not a part of the trade, business or occupation of the owner, and the owner contracts with a contractor to do it, the contractor is liable to the workman, but not the owner. As between the owner and such contractor, the latter is an independent contractor, and . . . such workman shall not be taken to be the employe[e] of such owner. And such liability remains on the contractor so long as any workman in the descending scale is performing work which is part of the trade, business or occupation of the contractor; but such liability does not extend to a workman who is performing work which may have some relation to the work of the original contractor but which is not part of the trade, business or occupation of the original contractor.

*Sykes v. Stone & Webster Eng'g Corp.*, 186 Va. 116, 122, 41 S.E.2d 469, 472 (1947); *see Smith v. Weber*, 3 Va. App. 379, 382-83, 350 S.E.2d 213, 214-15 (1986). The purpose of this provision is to prevent an owner, contractor or subcontractor from escaping liability under the Act "by the simple expedient of subcontracting away work which is part of its trade, business or occupation. Such [an entity] will remain liable under the Act to the extent that the work subcontracted is part of [its] trade, business or occupation." *Henderson v. Central Tel. Co.*, 233 Va. 377, 381, 355 S.E.2d 596, 598-99 (1987). It is in this context that a determination of the identity of the general contractor— the one who undertakes "to perform or execute any work" within the meaning of Code § 65.2-302—if one exists in this case, is relevant.

As found by the commission, the uncontradicted evidence shows that Bogese and Flack entered into a written contract for the purchase

of a lot and a house that was to be constructed on that lot by Bogese. By separate oral agreement, Bogese agreed to allow Flack to negotiate lower prices with subcontractors to perform various aspects of the work. Nevertheless, the evidence supports the commission's finding that Bogese was the general contractor because it remained obligated to deliver to Flack a dwelling constructed to the specifications set forth in the contract and at a price no higher than the contract price, regardless of whether Flack managed to secure subcontractors to perform the work at a lower price. As found by the commission, Bogese owned the lot, obtained all required building permits (on which it was listed as the general contractor), supervised and paid all subcontractors, and remained responsible for seeing that their work complied with relevant building codes. Although Bogese and Sears never signed a written contract, a contractual relationship between the parties within the meaning of the Act could have been found to have existed. *Cf. States Roofing Corp. v. Bush Constr. Corp.*, 15 Va. App. 613, 618, 426 S.E.2d 124, 127 (1993) (holding that where new general contractor's conduct manifested an implied agreement to assume previous general contractor's contractual liabilities with subcontractors, new general contractor was statutory employer at time of injury to subcontractor's employee). Although Flack negotiated the price for Sears' work, Bogese and Sears met at the job site to determine what should be done and where, and Bogese oversaw the correction of a drainage problem which arose with Sears' work. Finally, Bogese ultimately paid Sears for his work.

Furthermore, the facts of *Kramer v. Kramer*, 199 Va. 409, 100 S.E.2d 37 (1957), cited by appellant, do not require a different conclusion. The contractor in that case expressly agreed to "perform all labor required for rough and finish carpentry and supervision necessary to complete the work regarding the . . . church" for "the sum of . . . $13,239.00." *Id.* at 411, 100 S.E.2d at 39. Expressly excluded from that price were the following: "any concrete forming, installation of pews, pulpit or altar furniture or any labor connected with finished grading." *Id.* While a hoisting service was working to raise arches necessary for the improvements, one of its employees was fatally injured. *Id.* at 412, 100 S.E.2d at 40. The evidence showed, among other things, that the hoisting company's bill was paid in part by the contractor and in part by the church. *Id.* at 414, 100 S.E.2d at 41. From conflicting evidence—which the court implied would have supported either of two conclusions—the jury evidently found that the church had entered into two separate contracts, one with the defendant con-

tractor "to perform the carpentry work on a structure the church wanted to build, as well as to supervise as agent for the church the work of others to whom-the church would let other parts of the work," and one with a hoisting service "to erect the trusses in the building, and [whose] work was not part of the carpentry work contracted to the defendant." *Id.* at 416, 100 S.E.2d at 42. For that reason, defendant contractor and the hoisting service were independent contractors rather than contractor and subcontractor. *Id.*

In this case, by contrast, the record contained credible evidence from which the commission could have concluded that Bogese contracted to deliver to Flack a completed home, not merely to supervise its construction. This made Bogese both the general contractor and claimant's statutory employer.

For these reasons, we conclude that the result reached by the commission as to this issue was legally sound and supported by credible evidence.

### B.

■ Bogese also contends that the commission erred in finding under Code § 65.2-600(D) that Robertson's delay in giving notice was reasonable and caused it no prejudice. Subsection (D) states that

> [n]o compensation or medical benefit shall be payable unless such written notice is given within thirty days after the occurrence of the accident . . ., unless reasonable excuse is made to the satisfaction of the Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby.

The burden of showing a reasonable excuse for the delay in giving notice is on the employee; the burden of showing prejudice caused by that delay is on the employer. *Westmoreland Coal Co. v. Coffey*, 13 Va. App. 446, 448, 412 S.E.2d 209, 211 (1991). Here, the commission found as a fact that Sears had misled Robertson as to the identity of the general contractor; that Robertson "was not aware that Bogese was the general contractor" until he received Sears' answers to interrogatories filed April 17, 1992; and that upon receipt of that information, Robertson gave notice to Bogese within two weeks. Because these findings are supported by credible evidence, we conclude that the commission did not err in finding Robertson's excuse reasonable. We also conclude that the commission did not err in finding that Bogese

was not prejudiced by this delay. Bogese, as found by the commission, "presented a vigorous defense before the Deputy Commissioner," but failed to present any evidence to that effect, and the record shows that Robertson received immediate treatment for his injuries. We, therefore, cannot conclude that the commission erred as to this issue.

## C.

Lastly, Bogese assigns error to the commission's award of benefits for the period prior to appellant's receipt of notice. Under subsection (C),

> [t]he employee shall not be entitled to physician's fees nor to any compensation which may have accrued . . . prior to the giving of such notice, unless it can be shown that the employer, his agent, or representative had knowledge of the accident or that the party required to give notice had been prevented from giving notice by reason of . . . the fraud or deceit of some third person.

Code § 65.2-600(C). Although the commission did not expressly consider the requirements of subsection (C), it made sufficient findings of fact in analyzing subsection (D) to enable this Court to apply the law. Because the commission found that Sears misled Robertson as to the identity of the general contractor until April 1992, we conclude that deceit prevented Robertson from giving the required notice. The record does not reveal whether he inquired further as to the identity of the general contractor after learning in December, 1991, that Sears had lied to him. We conclude, however, that in view of Sears' behavior, it would have been reasonable for Robertson to retain counsel and pursue his legal remedies without further reliance on the possibility that Sears would be forthcoming with accurate information.

For these reasons, we affirm the commission's award.

*Affirmed.*

Benton, J., and Koontz, J., concurred.