**AMERICAN ROCK SALT COMPANY, LLC, Plaintiff,**

v.

**NORFOLK SOUTHERN CORPORATION, Norfolk Southern Railway Company, Defendants.**

No. 00–CV–6534L.

United States District Court, W.D. New York.

Sept. 17, 2001.

Paul J. Yesawich, III, Harris Beach LLP, Pittsford, NY, for plaintiff.

Robert S. Attardo, Rochester, NY, Paul D. Keenan, George S. Bobnak, Hoyle, Morris & Kerr, LLP, Philadelphia, PA, for defendants.

### *DECISION AND ORDER*

LARIMER, Chief Judge.

Plaintiff, American Rock Salt Company, LLC ("ARSCO"), commenced this action in New York State Supreme Court, Livingston County, on October 13, 2000. Defendants, Norfolk Southern Corporation ("NSC") and Norfolk Southern Railway Company ("NSR"), removed the action to this court, based on diversity jurisdiction under 28 U.S.C. § 1332. Defendants have moved to dismiss the complaint (with the exception of one cause of action against NSR), for failure to state a claim upon which relief can be granted. For the following reasons, defendants' motion is denied.

## BACKGROUND

The complaint alleges the following facts, which must be accepted as true for the purposes of defendants' motion to dismiss. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 739, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976).

ARSCO, a limited liability company with its principal place of business in Mount Morris, New York, is engaged in the business of mining, producing, and selling rock salt in the Northeastern United States. ARSCO ships salt, particularly deicing salt, to and from various points in the Northeast. This salt comes both from AR-SCO's own salt mines and from other parties from whom ARSCO purchases salt for resale.

Prior to June 1999, ARSCO had a transportation contract with Consolidated Rail Corporation, Inc. ("Conrail"), pursuant to which Conrail agreed to transport AR-SCO's products by rail from certain points of origin. In the Spring of 1997, however, Conrail was acquired by NSC and CSX, Inc. NSC is a Virginia corporation that owns NSR, a rail carrier providing rail transportation and distribution services.

NSC and CSX did not actually begin operation of the former Conrail system until June 1, 1999. On that date, NSC and NSR assumed responsibility for providing rail service to ARSCO along former Conrail routes. Accordingly, on June 8, 1999, ARSCO and NSR entered into a contract

("the contract") for the provision of transportation services. NSC was not a signatory to the contract.

The complaint alleges that prior to the execution of the contract, NSC represented both to the Surface Transportation Board ("STB") (which had the authority to approve or deny NSC's acquisition of Conrail's assets) and to ARSCO that NSC would timely integrate Conrail's routes into NSC's existing rail network and that the Conrail acquisition would not cause any disruption of rail service.

Plaintiff alleges that despite these assurances, ARSCO began to experience delays and other service problems in connection with the shipment of its deicing salt on former Conrail lines now being operated by defendants. In some cases, shipments were delayed by as much as six months. The average "turn time," *i.e.,* the time needed to make a round trip between two points, also increased by several weeks compared to when Conrail ran the lines.

Because of these delays, ARSCO incurred expenses attributable to additional days of railroad car rental. ARSCO was also forced to rent trucks to ship its product when rail service was unacceptably delayed. ARSCO also claims to have lost business and profits as a result of its inability to make deliveries on time.

Based upon these allegations, plaintiff asserts three causes of action. The first alleges that defendants have breached the contract by failing to provide services and deliver ARSCO's products in a timely manner. The second cause of action alleges that defendants' failure to provide timely transportation upon reasonable request constitutes a breach of their obligations as a common carrier under 49 U.S.C. §§ 11101(a) and 11121(a)(1). The third cause of action alleges that defendants have failed to deliver ARSCO's goods with reasonable dispatch, in violation of 49 U.S.C. § 14706 and 49 C.F.R. § 1035.1(b)(2). Plaintiff seeks compensatory damages, which are alleged to exceed $700,000, and costs and attorney's fees.

## DISCUSSION

### I. Motion to Dismiss Claims Against NSC

Defendants contend that all three causes of action must be dismissed as to NSC for the simple reason that NSC is not a party to the contract at issue, and hence cannot have breached any obligation arising by virtue of that contract. Defendants allege that NSC is merely a holding company that does not provide any rail transportation services.

In response, ARSCO concedes that NSC was not a signatory to the contract, but contends that the complaint sufficiently alleges facts that would support a finding that NSC, through its words or conduct, manifested its intent to be bound by the contract.

■ Defendants do not appear to dispute the general proposition that a non-signatory to a written contract can still, through its own consent, be bound by its terms. That consent can be manifested by both the party's words and its actions.[1] *See, e.g., Marefield Meadows, Inc. v. Lorenz,* 245 Va. 255, 260, 427 S.E.2d 363 (1993) ("A meeting of the minds is essen-

---

1. The contract states that it shall be governed by Virginia law. Affidavit of Paul J. Yesawich, III (Docket Item 8), Ex. A § 10. New York courts-whose choice-of-law rules this court is bound to apply in this diversity action, *see Totalplan Corp. of America v. Col-* *borne,* 14 F.3d 824, 832 (2d Cir.1994)-give effect to such choice-of-law clauses in the absence of fraud or overriding contrary public policy. *See Marine Midland Bank, N.A. v. United Missouri Bank, N.A.,* 223 A.D.2d 119, 123, 643 N.Y.S.2d 528 (1st Dep't 1996).

tial to the formation of a contract, but 'the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts'") (quoting *Lucy v. Zehmer*, 196 Va. 493, 503, 84 S.E.2d 516 (1954)); *States Roofing Corp. v. Bush Constr. Corp.*, 15 Va.App. 613, 618, 426 S.E.2d 124 (1993) (conduct of all parties "manifested a clear understanding" that plaintiff, which had purchased subcontractor's assets, had assumed contracts subcontractor's contracts with both general contractor and sub-subcontractor); *City of Richmond, Virginia v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 451 and n. 11 (4th Cir.1990) (evidence was sufficient to support finding that corporation that had purchased assets of manufacturer "implicitly assumed" manufacturer's liabilities by continuing to work on project in which manufacturer had been engaged; noting that this determination was "necessarily fact-bound").

Defendants, however, maintain that the complaint does not allege sufficient facts to support such a theory in this case. Defendants argue that the facts relied upon by plaintiff to establish that NSC consented to be bound by the terms of the contract (*e.g.*, NSC's alleged participation in the negotiation of the contract) are contained solely in the affidavit of plaintiff's counsel, who lacks personal knowledge of the matters asserted, and must therefore be disregarded. Defendants argue that since the complaint itself makes no allegation that NSC was a party to the contract, the claims against NSC must fail.

 It is true that an attorney's affidavit that is not based on personal knowledge carries no weight and may be disregarded. *See, e.g., In re Western Dist. Xerox Litigation*, 850 F.Supp. 1079, 1088 (W.D.N.Y.1994). Plaintiff, however, is not seeking to present evidence or make new allegations through its attorney's affidavit.

The affidavit simply points to various allegations in the complaint that, in plaintiff's view, tend to show that NSC could be found to have consented to be bound by the contract. These include allegations that: NSR is a wholly-owned subsidiary of NSC; NSC owns and controls the railroad lines that NSR operates on its behalf; NSC and NSR assumed responsibility for providing rail service to ARSCO over the former Conrail routes; and NSC made various representations to the STB and to ARSCO concerning the effects of NSC's acquisition of the Conrail routes on the provision of rail service to former Conrail customers, including ARSCO.

In addition, plaintiff has attached a copy of the contract to plaintiff's attorney's affidavit. In an action for breach of contract, the contract itself, as long as its authenticity is not in dispute, is generally to be considered a part of the pleadings, and may be considered on a Rule 12(b)(6) motion. *See, e.g., Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1219–20 (1st Cir.1996) (noting that written documents integral to complaint, including contracts, are not considered "matters outside the pleadings" for purposes of Rule 12(b)); *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir.1993) (documents whose authenticity is not disputed by the parties, including official public records, documents central to plaintiff's claim, or documents sufficiently referred to in the complaint, may be treated as part of the pleadings, even though not attached to complaint); *Rayburn v. Car Credit Ctr. Corp.*, No. 00 C 3361, 2000 WL 1508238 *1 n. 1 (N.D.Ill. Oct.10, 2000) (plaintiff "did not attach the contract to her complaint. Nevertheless, the document is considered a part of the pleadings and may be utilized for purposes of a motion to dismiss where, as here, the document is referred to in the plaintiff's complaint and is central to her claim"); *Ingeniera y Representaciones In-*

*ternacionales, S.A. v. Stone & Webster Int'l Projects Corp.*, No. 96 CIV. 7335, 1997 WL 529015 *1 (S.D.N.Y. Aug.25, 1997) ("Although the parties failed to attach the relevant contract to the pleadings, it may still be considered as part of the pleadings").

The contract itself contains some references to NSC. It states that upon request by NSR, ARSCO must certify to NSC that ARSCO has complied with its minimum-volume requirements under the contract. Yesawich Aff. Ex. A § 3. It also provides that all notices and other communications under the contract are to be directed to ARSCO and to NSC, not to NSR. *Id.* § 11.

In assessing the strength of these allegations, it is important to keep in mind that this is a motion to dismiss, not a motion for summary judgment. On a motion to dismiss for failure to state a claim, the "complaint must be sustained if relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (on motion to dismiss, district court must accept all allegations in the complaint as true and draw all inferences in non-moving party's favor, and "will not dismiss the case unless it is satisfied that the [plaintiff] cannot state any set of facts that would entitle him to relief"). Under that liberal standard, I find that the allegations contained in the complaint are sufficient at this stage to allow plaintiff's claims against NSC to go forward. The complaint alleges that both NSC and NSR have breached their contractual obligations, and that both defendants have some involvement in the underlying events. Assuming that plain-

tiff's claims are otherwise valid (in other words, assuming that plaintiff can establish a breach of some contractual or statutory duty), it cannot be said that under no set of facts consistent with those allegations that plaintiffs could prevail on their claims against NSC due solely to the fact that NSC is not a signatory to the contract.

## II.A. Claims Under 49 U.S.C. §§ 11101(a) and 11121(a)(1)

The second cause of action alleges that defendants' "failure to provide timely transportation upon reasonable request constitutes a violation of their obligations as a common carrier under 49 U.S.C. §§ 11101(A) and 11121(A)(1)." Section 11101(a) provides in part that a "rail carrier providing transportation or service subject to the jurisdiction of the Board under this part shall provide the transportation or service on reasonable request." Section 11121(a)(1) provides in part that a "rail carrier providing transportation subject to the jurisdiction of the Board under this part shall furnish safe and adequate car service and establish, observe, and enforce reasonable rules and practices on car service."

Defendants contend that this claim must be dismissed because an alleged breach of a common-carrier duty under the Interstate Commerce Act ("ICA"), 49 U.S.C. § 10101 *et seq.*, of which these statutes form a part, is not actionable where the duties of the parties are specified under state law according to the terms of a written contract. Defendants also state that there is no express or implied cause of action under the ICA for breach of a private contract for rail services.

■ Plaintiff responds that the contract itself, by its terms, incorporates government rules and regulations. The contract states, *inter alia:*

Except to the extent inconsistent with any provision herein, shipments made under the terms of this Contract are subject to all classifications, tariffs (for regulated commodities only), exempt circulars and circulars of other railroads participating in the transportation involved, *government*, AAR and carriers rules, regulations and provisions, ... and such rules and regulations covering limitation of action, weighing, freight loss and damage claims, demurrage and switching, loading, car service and interchange that would apply if this Contract were not in effect.

Yesawich Aff. Ex. A § 6 (emphasis added). Plaintiff also argues that it can plead this claim in the alternative to its breach-of-contract claim, in case the transportation services at issue are for some reason determined not to be governed by contract.

Defendants reply that the contract's alleged incorporation of the statutory duties relied upon by plaintiff simply means that the second cause of action is duplicative of the first, since a breach of the regulations referred in the contract to would necessarily constitute a breach of contract as well. Defendants also repeat that, regardless of whether the contract governs, §§ 11101(a) and 11121(a)(1) do not create a private right of action.

Although I have my doubts about the validity of this claim, I believe that it would be premature to dismiss it at this time. There is support for defendants' contention that the parties' rights and obligations in a contract-carrier situation are limited to the terms of the contract itself. Section 10709, which permits rail carriers to enter into contracts for rail service, states that a "party to a contract entered into under this section shall have no duty in connection with services provided under such contract other than those duties specified by the terms of the contract." 49 U.S.C. § 10709(b). That section also provides that a "contract that is authorized by this section, and transportation under such contract, shall not be subject to this part," [2] and that "[t]he exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree." 49 U.S.C. § 10709(c).

■ It has been stated that "the purpose of § 10709 is to allow parties the ability to alter federal mandates, or to avoid federal control and oversight over rail contracts." *Dow Chem. Co. v. Union Pac. Corp.*, 8 F.Supp.2d 940, 941 (S.D.Tex. 1998) (remanding breach-of-contract action against railway carrier to state court on ground that state-law contract claim was not preempted by ICA); *accord Consolidated Rail Corp. v. Rail Services, Inc.*, No. 5:99–CV–144, 2001 U.S. Dist. LEXIS 190 *6 (W.D.Mich. Jan. 4, 2001). That does not mean, however, that the parties themselves cannot contractually agree to be bound by particular statutory or regulatory duties by importing those duties into the contract itself. *See, e.g., Entergy Services, Inc. v. Union Pacific R.R. Co.*, 99 F.Supp.2d 1080, 1089 (D.Neb.2000) (section 10709(b) "was enacted to make clear that other previous regulatory duties imposed on carriers in the past would not be applied unless drafted into the parties' contract").

■ The contract here does state that it "is made pursuant to 49 U.S.C. § 10709 ...." Yesawich Aff. Ex. A at 1. Nevertheless, it also states that "[e]xcept to the extent inconsistent with any provisions herein," NSR's duties are subject to "gov-

---

**2.** "This part" refers to Part A ("Rail") of Title 49, Subtitle IV.

ernment ... rules, regulations, and provisions ... that would apply if this Contract were not in effect." In addition, by its terms the contract is to be governed by Virginia law, "except to the extent otherwise provided herein."

Given this reference to "government" rules and regulations, and the qualified nature of the choice-of-law provision, I do not find the contract to be so clearly intended to preclude the application of federal law as to warrant dismissal of this claim at this juncture. In addition, although this cause of action is arguably duplicative of the breach-of-contract claim asserted in the first cause of action, both of them are based upon the same set of facts, and permitting this claim to go forward should not appreciably expand the scope of discovery needed in this case. Since the contract claim is proceeding, I see no prejudice to defendants in allowing the second cause of action to proceed at this point as well.

### B. Claim Under 49 U.S.C. § 11706

The third cause of action alleges that "due to Norfolk Southern and NSR's failure to make deliveries with reasonable dispatch as required by 49 C.F.R. § 1035.1(b)(2) and 49 U.S.C. § 14706, ARSCO has suffered damages, including lost profits, in an amount not presently ascertainable but which, upon information and belief, exceed $700,000.00." Defendants contend that this claim should be dismissed because § 14706 applies only to motor carriers, not to rail carriers.

That assertion is correct. Plaintiff, however, states that the citation of § 14706 was an oversight, and that plaintiff meant to cite 49 U.S.C. § 11706 instead. Section 11706, commonly known as the Carmack Amendment, provides for liability of rail carriers under receipts and bills of lading for loss of or injury to property. In addi-

tion, 49 C.F.R. § 1035.1 requires common carriers to use bills of lading, and Appendix B to Part 1035, which sets forth the prescribed terms for bills of lading, provides that "[n]o carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch."

In their reply memorandum of law, defendants do not appear to contend that plaintiffs cannot state a claim under the Carmack Amendment. In fact, defendants state that "[c]laims for loss or damage to freight while in interstate rail carriage are governed exclusively by the Carmack Amendment to the Interstate Commerce Act." Defendants' Reply Memorandum of Law at 3 (citing 49 U.S.C. § 11706).

Whether a claim under the Carmack Amendment ultimately proves viable in this case may depend on whether the parties' rights and obligations are governed by the contract; if they are, the Carmack Amendment may not apply. *See* 49 U.S.C. § 10709(c)(1) (contract authorized by § 10709, and transportation under such contract, are not subject to Part A of Subtitle IV, which includes Carmack Amendment); *Dow Chem.*, 8 F.Supp.2d at 941 ("the very purpose of § 10709 is to allow contracting parties to avoid the entire federal regulatory scheme, of which the Carmack Amendment is a part"). At this early stage in the proceedings, however, that issue remains to be determined. *See Hargrave v. Freight Distr. Service, Inc.*, 53 F.3d 1019, 1022–23 (9th Cir.1995) (issue of fact existed as to whether carrier was providing contract carriage or common carriage when it transported goods). Although the complaint alleges the existence of a contractual relationship, and a copy of the contract has been submitted to the court, it has not yet been conclusively established whether the contract is valid or

whether all of the transportation services at issue in this case were governed by the contract. Defendants' motion to dismiss this cause of action is therefore denied.

As stated, however, the complaint, through what appears to be a typographical error or oversight, mistakenly cites 49 U.S.C. § 14706 instead of § 11706. In order to correct that mistake, plaintiff is directed to file an amended complaint with the correct statutory citation within ten days of the date of entry of this Decision and Order.

## CONCLUSION

Defendants' motion to dismiss the complaint (Docket Item 3) is denied.

Plaintiff is directed to submit an amended complaint within ten (10) days of the date of entry of this Decision and Order.

IT IS SO ORDERED.