COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Fulton
Argued at Alexandria, Virginia

PUBLISHED

PAE NATIONAL SECURITY SOLUTIONS, LLC

                                                          OPINION BY
v.        Record No. 1598-23-4                   JUDGE RANDOLPH A. BEALES
                                                          JANUARY 7, 2025

CONSTELLIS, LLC


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Mariam W. Tadros (John D. Perry; Womble Bond Dickinson (US)
LLP, on briefs), for appellant.

Kevin F.X. DeTurris (Juli M. Porto; Wendy E. Cousler;
Blankingship & Keith, P.C., on brief), for appellee.


PAE National Security Solutions, LLC ("PAE") brought a breach of contract claim

against Strategic Social, LLC ("S2") and a successor liability claim against Constellis, LLC.[1]

Following a bench trial, the Circuit Court of Fairfax County entered judgment in favor of PAE

on its breach of contract claim against S2, but the trial court found in favor of Constellis, LLC on

PAE's successor liability claim.  On appeal, PAE argues that the trial court erred in concluding

that there was no successor liability in this case.

## I.  BACKGROUND

"On appeal, we view the evidence and all reasonable inferences arising therefrom in the

light most favorable to the prevailing party at trial."  *Coxcom v. Fairfax Cnty.*, 301 Va. 201, 212

(2022) (quoting *W. Refining Yorktown, Inc. v. Cnty. of York*, 292 Va. 804, 815 (2016)).  In this case,

Constellis, LLC prevailed in the trial court on PAE's successor liability claim.

---

[1] S2 is not a party to this appeal.

In January 2013, PAE's predecessor, A-T Solutions, Inc. ("A-TS"),[2] entered into a Subcontract Agreement (the "Subcontract") with S2 in support of S2's contract with the Iraqi Government for the Basra Surveillance Camera Project (the "Prime Contract").[3] Pursuant to the terms of the Subcontract, A-TS provided S2 with "logistic support services, including the purchase of equipment and items," and also provided "certain limited training services to support existing and future" security projects in Iraq. A-TS invoiced S2 on a monthly basis for its services. Between 2013 and 2014, A-TS invoiced S2 on eleven separate occasions, but S2 failed to remit the full amount of the last two invoices from April 2014 and May 2014, amounting to $539,408.34. S2 maintained that its failure to pay the last two invoices was due to the Iraqi Government's failure to pay S2 for the services S2 rendered to the Iraqi Government under the Prime Contract. S2 later initiated litigation in Iraq against the Iraqi Government to recover the money owed to S2 under the Prime Contract (the "Basra Litigation").

The Subcontract contains several provisions regarding S2's payment to A-TS and the procedure in the event of nonpayment by S2. The Subcontract provides that "A-TS shall receive a 15% margin markup for the purchasing of equipment and items and will invoice in full for all services (including labor at a fully-burdened rate) associated with each shipment" — and that

---

[2] A-TS was then a Virginia corporation having its principal place of business in Vienna, Virginia. A-TS later converted from a corporation to a limited liability company and consolidated into PAE. PAE is a Virginia limited liability company that is authorized to transact business in Virginia.

[3] S2 is a Delaware limited liability company that is registered to transact business in Virginia and has an office in Arlington, Virginia. S2 is owned by Strategic Social Holdings, LLC ("S2 Holdings"), a Delaware limited liability company that is headquartered in Arlington, Virginia. S2 Holdings and its subsidiaries "specialize in strategic communication services and technology enabled infrastructure services in remote locations, emerging markets, and hostile and inhospitable environments." They provide services "predominantly to agencies of the federal and foreign governments," and their services include "data gathering and analysis, public opinion research, market research and intelligence, media analysis, media development and distribution, and effects assessment."

"A-TS will be paid within 10 days of customer payment receipt by S2 which is anticipated to be within 30-45 days after acceptance of equipment by customer."  Paragraph 3 of the Subcontract then describes S2's obligation to pay A-TS, stating, "S2 is obligated to pay A-TS based on the fees and margins described above for all deliverables and services duly performed hereunder notwithstanding references herein to payments between S2 and Client [the Iraqi Government]." In addition, Paragraph 24(b) of the Subcontract provides:

> Without prejudice to any other provision hereof, in the event of any claim, dispute or action between S2 and the Client [the Iraqi Government] that results in Client's failure to pay S2 for any equipment, items or services properly provided by Subcontractor [A-TS], S2 agrees to diligently pursue any and all rights and remedies available to S2 to recover any and all payments relating to such Subcontractor Services.  S2 shall also take such actions as reasonably necessary to mitigate any Subcontractor losses that are not caused or created by Subcontractor, including, at S2's expense, the recovery, resale and/or return of equipment and deliverables.

In the event of an action arising out of the Subcontract, Paragraph 22 states:

> No action arising out of this Subcontract, regardless of the form thereof, may be brought by either party more than two (2) years following the date the cause of action arose or the date upon which the party bringing the action first knew or reasonably should have known of its cause of action, whichever occurs later.

In January 2014, Constellis Group, Inc. ("Constellis, Inc.")[4] acquired all of the outstanding membership units of S2 Holdings (the parent company of S2) from third party unit owners through a Unit Purchase Agreement (the "Purchase Agreement").[5]  In Section 2.7 of the Purchase Agreement, S2 Holdings represents that all accounts, notes, other receivables, and amounts owed "are free and clear of all Encumbrances other than Permitted Encumbrances, and,

---

[4] Constellis Group, Inc. is a Delaware corporation that later became Constellis, Inc. Constellis, Inc. is not a party to this litigation.

[5] Constellis, LLC (the named appellee to this appeal) is a Delaware limited liability company that owns Constellis Holdings, Inc., which, in turn, owns Constellis, Inc.

to the extent not previously collected or reserved for in the reserve for bad debts set forth on the Interim Financial Statements, are fully collectible and not subject to any valid claims, setoffs, defenses or counterclaims." Schedule 2.13(a) then lists the contracts of S2 Holdings and each of its subsidiaries that are covered by the Purchase Agreement — including the "Basra Camera Contract Exclusive Agreement, dated as of January 3, 2014, by and between Strategic Social, LLC and Wahj Al Ayn (Eye Media), an Iraqi Company." Schedule 2.13(b), in turn, states that S2 Holdings and each of its subsidiaries "have performed in all material respects all obligations required to be performed by it to date" under those contracts — and that S2 Holdings and each of its subsidiaries are not "in breach or default in any material respect" under those contracts.

In July 2014, the Chief Legal Officer of Constellis, Inc. notified S2 Holdings of Constellis, Inc.'s claim for indemnification. In the notice, Constellis, Inc. asserted that S2 Holdings had breached Section 2.7 of the Purchase Agreement "by including an aggregate of $4,199,565.43 of unbilled Receivables relating to the Basra Camera Project as fully collectible." Constellis, Inc. averred that, because "none of these Unbilled Receivables have been collected," it "has been forced to expend additional resources to initiate and to support legal action to attempt collection." In a supplemental notice, Constellis, Inc. asserted that S2 Holdings had also breached Section 2.9 and Section 2.13(b) of the Purchase Agreement by "not disclos[ing] that there was a significant penalty accruing on the Basra Contract for delays" — and that the penalty for the delays "constitut[ed] a material default."

After receiving the notices, S2 Holdings entered into an Amendment to Unit Purchase Agreement and Mutual Releases (the "Amendment") with Constellis, Inc. to address the Basra Litigation. Without admitting "liability or responsibility on the part of either party," Constellis, Inc. agreed that it would "continue to manage and fund the Basra[] Litigation at its sole cost and expense in good faith through the earlier of its final determination or December 31, 2015." The

Amendment provided that Constellis, Inc. could then "choose to continue funding the Basra[] Litigation or, in its sole discretion, take any other action it deems advisable, up to and including abandoning such action." Constellis, Inc. also agreed to employ a certain named individual, Cliff Lopez, to manage the Basra Litigation, as well as to engage another certain named individual, David Gessell, to assist with the Basra Litigation. In addition, the parties to the Amendment agreed that "[t]he Amendment shall inure to the benefit of, and be binding upon, the successors and assigns of the Parties."

In May 2016, counsel for PAE requested payment from S2 for the unpaid 2014 invoices that were owed to A-TS. In response, "one of the in-house attorneys for Constellis, LLC, the parent company to Strategic Social, LLC," emailed counsel for PAE to confirm receipt of the May 2016 letter and to explain Constellis, LLC's position that the Subcontract's "payment terms are paid when paid." Counsel for Constellis, LLC stated, "Once S2 receives payment from the customer [the Iraqi Government] we will promptly pay AT-Solutions in accordance with the agreement." Counsel for Constellis, LLC and counsel for PAE maintained regular contact from mid-2016 to March 2018 regarding the status of the Basra Litigation. The Basra Litigation "went through several layers of appeals and was ultimately dismissed by the court of last resort in Iraq, the Court of Cassation, on December 13, 2017." PAE, however, was not made aware of that development until the summer of 2021. In August 2021, PAE sent S2 a demand letter requesting "payment in the amount of $539,408.24 no later than September 2, 2021," due to S2's "abandonment of the lawsuit" in Iraq. PAE claimed that S2's "abandonment of the litigation itself is a breach" of Paragraph 24(b) of the Subcontract. On October 25, 2021, PAE filed suit in the Circuit Court of Fairfax County asserting a breach of contract claim against S2, as well as a successor liability claim against Constellis, LLC.

Following a bench trial, the trial court entered judgment in favor of PAE on its breach of contract claim against S2 in the amount of $539,408.34, but the trial court found in favor of Constellis, LLC on PAE's successor liability claim. In a letter opinion dated July 6, 2023, the trial court found that "Constellis Inc. acquired all the outstanding shares in S2 Holdings through the Agreement from third-party sellers, making the relationship between Constellis Inc. and S2 Holdings, and by extension S2, one of a parent and a wholly owned subsidiary." The trial court concluded that "[a] successor liability theory running from S2 Holdings to Constellis Inc. would be inappropriate as the only proper theory of successor liability would run from the former unit owners of S2 Holdings to Constellis Inc., who were the sellers and buyers in the transaction."

Furthermore, the trial court found that, even if it assumed that successor liability could arise from the Amendment to the Purchase Agreement "based on the language about the litigation and the actions of the parties and run to Constellis Inc., Plaintiff [PAE] failed to prove how Constellis LLC could be held liable as a successor when Constellis Inc. was the party to the Amendment, not Constellis LLC." The trial court found that the Purchase Agreement and the Amendment put Constellis, Inc. in the shoes of the third-parties. The trial court ruled that, in order to succeed in its claim, PAE would "have to pierce the corporate veil of S2 Holdings to reach Constellis Inc., and then pierce the veil of Constellis Inc. to hold Constellis LLC liable on the Subcontract." The trial court opined that "[t]his attempt at legal leapfrogging is unattainable," and it concluded that Constellis, LLC could not be held liable for a breach of the Subcontract under the theory of successor liability. PAE appeals the denial of its successor liability claim against Constellis, LLC to this Court.

## II. ANALYSIS

On appeal, PAE argues, "The trial court erred when it found that, because Constellis, Inc. did not purchase the assets and liabilities of S2 Holdings but instead acquired the outstanding shares in S2 Holdings from third parties, there could be no successor liability." PAE also argues,

> The trial court erred when it found that, even if Constellis, Inc.'s successor liability could arise from the amendment to the Unit Purchase Agreement based on language about the litigation and the actions of the parties, Constellis, LLC would still not be liable under a theory of successor liability because it was not a party to the Unit Purchase Agreement or the amendment thereof.

"The question whether the plaintiff introduced sufficient evidence to hold a parent company liable for the debts of its subsidiary is a question of fact." *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631 (2002). "We give the findings of fact made by a trial court that heard the evidence and evaluated the credibility of the witnesses at a bench trial the same weight as a jury verdict." *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006). "Those factual findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them." *Id.* "[U]nder [this] standard of review applicable to judges sitting as factfinders no less than jurors, we review factfinding with the highest degree of appellate deference." *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017) (quoting *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 117 (2017)). "For those issues that present mixed questions of law and fact, we give deference to the trial court's findings of fact and view the facts in the light most favorable to the prevailing party, but we review the trial court's application of the law to those facts *de novo*." *Collins*, 272 Va. at 749.

"The general rule in Virginia is that a company may acquire the assets of another company without assuming responsibility for its debts and liabilities." *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 258 (2017); *cf. States Roofing Corp. v. Bush Constr. Corp.*, 15 Va. App. 613, 617 (1993) ("Generally, 'where one company sells or otherwise

transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor.'" (quoting *City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 450 (4th Cir. 1990))); *Kaiser Found. Health Plan v. Clary & Moore, P.C.*, 123 F.3d 201, 204 (4th Cir. 1997) ("In Virginia, as in most states, a company that purchases or otherwise receives the assets of another company is generally not liable for the debts and liabilities of the selling corporation." (citing *Blizzard v. Nat'l R.R. Passenger Corp.*, 831 F. Supp. 544, 547 (E.D. Va. 1993); *Crawford Harbor Assoc. v. Blake Constr. Co.*, 661 F. Supp. 880, 883 (E.D. Va. 1987))). "This general rule of corporate non-liability serves, in effect, 'as a security blanket' that 'protects corporate successors from unknown or contingent liabilities of their predecessors.'" *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 25 F. App'x 116, 120 (4th Cir. 2001) (quoting *Conway v. White Trucks*, 692 F. Supp. 442 (M.D. Pa. 1988), *aff'd*, 885 F.2d 90 (3d Cir. 1989)).

However, Virginia recognizes the four traditional exceptions to the general rule against successor liability:

> (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, or (4) the transaction is fraudulent in fact.

*La Bella Dona Skin Care, Inc.*, 294 Va. at 258 (quoting *Harris v. T.I., Inc.*, 243 Va. 63, 70 (1992)); *see also Pepper v. Dixie Splint Coal Co.*, 165 Va. 179, 191 (1935); *Peoples Nat'l Bank v. Morris*, 152 Va. 814, 819 (1929). "These exceptions to the general rule seek to identify only those transactions 'where the essential and relevant characteristics of the selling corporation survive the asset sale,' thus rendering it equitable to hold the purchaser liable for the seller's obligations." *Nat'l Am. Ins. Co.*, 25 F. App'x at 120 (quoting *N. Shore Gas Co. v. Salomon, Inc.*, 152 F.3d 642, 651 (7th Cir. 1998)).

- 8 -

The Supreme Court has clearly stated, "The burden of proof always rests with the party alleging successor liability, but the scope of that burden varies depending upon the exception claimed." *La Bella Dona Skin Care, Inc.*, 294 Va. at 258. For example, a successor liability claim premised on the theory that "the transaction is fraudulent in fact" requires "proof by clear and convincing evidence." *Id.* ("This heightened burden is appropriate because of the equitable nature of suits involving fraud."). On the other hand, "[w]here successor liability is alleged pursuant to the mere continuation exception, proof of the continuation may be established by a preponderance of the evidence." *Id.* ("A higher standard of proof is not warranted because the exception does not require a showing of fraud."). In this case, PAE's sole "theory of successor liability is that Constellis, LLC impliedly or expressly assumed liability for the Basra[] Camera Projection litigation." Given that PAE has not claimed fraud as a basis for imposing successor liability against Constellis, LLC, PAE was therefore required to prove by a preponderance of the evidence that Constellis, LLC expressly or impliedly agreed to assume S2's liability under the Subcontract.

In general, "[a] successor corporation that expressly or impliedly agrees to assume the liabilities of its predecessor will be liable for such obligations." *Vianix Del., LLC v. Nuance Commc'ns, Inc.*, 637 F. Supp. 2d 356, 359 (E.D. Va. 2009); *see also City of Richmond*, 918 F.2d at 450 (noting that "the purchaser of assets can assume such liability either expressly or by implication"). Express assumption of liabilities occurs when the purchasing corporation explicitly states in the purchase agreement that it will take on the seller's liabilities. *See Harris*, 243 Va. at 69-70. Implied assumption of liabilities, on the other hand, can be inferred from the conduct of the purchasing corporation and the circumstances surrounding the transaction. *See City of Richmond*, 918 F.2d at 450-51 (explaining that "the determination of when a successor has implicitly assumed liabilities is necessarily fact-bound"). Factors that may indicate an

implied agreement include adopting contract rights, completing existing contracts, purchasing inventory, purchasing trade accounts, occupying existing premises, hiring former employees of the selling corporation, and seeking and receiving payment pursuant to the purchased company's contract. *See States Roofing Corp.*, 15 Va. App. at 618 (emphasizing that "[w]hen a party assumes the contract, or undertaking, of another he makes it his contract" (quoting *Economic Water Heating Corp. v. Dillon Supply Co.*, 156 Va. 597, 604-05 (1931))).

Even assuming without deciding that Constellis, Inc. (as the purchaser of S2 Holdings and, in turn, S2) could be liable under a theory of successor liability by expressly or impliedly agreeing to assume liability under the Subcontract, we find that the trial court properly concluded that there was no successor liability for Constellis, LLC (the parent company twice removed of Constellis, Inc.).[6] As the Supreme Court of the United States has clearly articulated, "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quoting Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 Yale L.J. 193 (1929)). "Ordinarily, a corporation which chooses to facilitate the operation of its business by employment of another corporation as a subsidiary will not be penalized by a judicial determination of liability for the legal obligations of the subsidiary." *Id.* (quoting Horton, *Liability of Corporation for Torts of Subsidiary*, 7 A.L.R.3d 1343, 1349 (1966)).

---

[6] It is well settled that "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). "The 'narrowest' answer to a legal question is the one affecting the least number of cases." *Id.* In this case, the best and narrowest ground is our conclusion that there was no successor liability for Constellis, LLC as the parent company of its twice-removed subsidiary, Constellis, Inc.

Indeed, it is well established that "[l]imited liability is the rule, not the exception." *Id.* (quoting *Anderson v. Abbott*, 321 U.S. 349, 362 (1944)).

As noted *supra*, A-TS (PAE's predecessor) and S2 entered into the 2013 Subcontract, which supported S2's underlying Prime Contract with the Iraqi Government for the Basra Surveillance Camera Project. Constellis Group, Inc. (which later became Constellis, Inc.) went on to acquire all of the outstanding membership units of S2 Holdings (the parent company of S2) from third party unit owners through the 2014 Purchase Agreement. Constellis Group, Inc. then entered into the 2015 Amendment to the Purchase Agreement with S2 Holdings, whereby Constellis Group, Inc. agreed to "manage and fund the Basra[] Litigation" for a certain period.

Conspicuously absent from these agreements and transactions, however, is Constellis, LLC, the named party in this matter. Constellis, LLC was not the purchaser of S2 Holdings under the Purchase Agreement, and nowhere in the Purchase Agreement did the parties explicitly state that Constellis, LLC would take on the liabilities of either S2 Holdings (the seller) or S2 Holdings's subsidiary (S2), let alone the liabilities of Constellis, Inc. (the purchaser). *See Harris*, 243 Va. at 69-70. In addition, although in-house counsel for Constellis, LLC (on behalf of its subsidiary, S2) communicated with counsel for PAE between 2016 and 2018 about the Basra Litigation and S2's obligations under the Subcontract, it cannot be said that the sharing of an in-house legal department between a parent company and its subsidiary is enough by itself to infer an implied assumption of liability. There is no indication that Constellis, LLC engaged in the type of conduct that would indicate an implied agreement — such as adopting contract rights, completing existing contracts, purchasing inventory, purchasing trade accounts, occupying existing premises, hiring former employees of the selling corporation, and seeking and receiving payment pursuant to the purchased company's contract. *See States Roofing Corp.*, 15 Va. App. at 618. Likewise, the circumstances surrounding the Purchase Agreement do not manifest an

implied agreement by Constellis, LLC to assume the liabilities at issue. *See id.* Consequently, the trial court did not err in finding that PAE failed to prove that Constellis, LLC was liable under a theory of successor liability.

Furthermore, the record before this Court on appeal does not support disregarding the legal structure of Constellis, LLC and its subsidiaries. The Supreme Court has long recognized:

> Before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary . . . it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable.

*Eure*, 263 Va. at 634 (quoting *Beale v. Kappa Alpha Order*, 192 Va. 382, 396-97 (1951)). "The separate corporate entities of corporations will be observed by the courts unless a corporation is shown to be the 'adjunct, creature, instrumentality, device, stooge, or dummy of another corporation.'" *Id.* (quoting *Beale*, 192 Va. at 399).

> Generally, courts will observe the separate corporate entity, even though one corporation "may dominate or control another, or may treat it as a mere department [or] instrumentality . . . and courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other."

*Id.* (quoting *Beale*, 192 Va. at 399). Indeed, the Supreme Court "has been very reluctant to permit veil piercing," and it has consistently held that "only 'an extraordinary exception' justifies disregarding the corporate entity and piercing the veil." *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 266 Va. 3, 10 (2003) (quoting *Greenberg v. Commonwealth*, 255 Va. 594, 604 (1998)). In Virginia, the standard for piercing the corporate veil of corporations is generally the same as that for other limited liability entities. *See id.*

The record before this Court on appeal shows that Constellis, LLC is the parent company of Constellis Holdings, Inc., which, in turn, owns Constellis, Inc. — and that Constellis, Inc. is the parent company of S2 Holdings, which, in turn, owns S2. Although we assume without deciding that Constellis, Inc. could be liable under the express or implied assumption of liability exception to the general rule against successor liability, we note that successor liability, however, cannot be imposed on a parent company by virtue of the imposition of successor liability on that parent company's subsidiary. *Cf. Bestfoods*, 524 U.S. at 61. PAE has not proven, let alone even argued, that Constellis, LLC was merely the *alter ego* of Constellis, Inc. *See Transparent GMU v. George Mason Univ.*, 298 Va. 222, 245 (2019) ("The Court will not disregard a corporate entity 'unless it is proved that the corporation is the *alter ego*, alias, stooge, or dummy of the individuals sought to be [held personally accountable] and that the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" (quoting *RF&P Corp. v. Little*, 247 Va. 309, 316 (1994))); *see also Richfood, Inc. v. Jennings*, 255 Va. 588, 592-93 (1998) ("The mere showing that one corporation is owned by another or that they share common officers is not a sufficient justification for a court to disregard their separate corporate structure."). Because Constellis, LLC and Constellis, Inc. are clearly two separate and distinct legal entities, the trial court did not err in declining to pierce the corporate veil and make Constellis, LLC legally responsible for any liability S2 (and even possibly Constellis, Inc.) owes to PAE.

## III. CONCLUSION

For all of the foregoing reasons, we hold that the trial court did not err in finding that Constellis, LLC is not liable to PAE under a theory of successor liability. Therefore, we affirm the judgment of the Circuit Court of Fairfax County.

*Affirmed.*

- 13 -